Casey G. Lowe (SBN 354186)
lowe.casey@gmail.com
2604 Sean Way
Mount Shasta, CA 96067
Telephone: (858) 736-7561

*Plaintiff, Self-represented*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

Sacramento Division

| | |
|---|---|
| CASEY G. LOWE,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>JOSEPH R. BIDEN, in his official capacity as President of the United States; THOMAS J. VILSACK, in his official capacity as Secretary of the United States Department of Agriculture; and the UNITED STATES DEPTARTMENT OF AGRICULTURE,<br><br>　　　　　Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY TRIAL REQUESTED** |

1

Plaintiff Casey G. Lowe alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Mr. Lowe is an individual who resides in Mount Shasta, California.

2. Defendant JOSEPH R. BIDEN ("President Biden") is, and at all times relevant hereto was, President of the United States. President Biden is sued herein in his official capacity.

3. Defendant THOMAS J. VILSACK ("Secretary Vilsack") is, and at all times relevant hereto was, the Secretary of the United States Department of Agriculture ("USDA"). Secretary Vilsack is sued herein in his official capacity.

4. Defendant UNITED STATES DEPARTMENT OF AGRICULTURE ("USDA") is a federal agency organized under the Executive Branch of the United States government.

5. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1346, and 1361.

6. Venue is proper within this District pursuant to 28 U.S.C. § 1391(e)(1) because Plaintiff resides within this District, and because the facts that gave rise to the Complaint occurred within this District.

**FACTUAL ALLEGATIONS**

7. On July 29, 2021, CNN published an article containing the following quote regarding the vaccination mandate for federal employees: "The goal of the requirement, Biden aides have said, is to render being unvaccinated **so burdensome** that those who haven't received shots will have little choice other than to get them." (emphasis added).

8. On July 29, 2021, President Biden stated that if one is unvaccinated, "[y]ou present a problem to yourself, to your family and to those with whom you work."

9. Between September 24, 2021, and January 4, 2022, President Biden also stated "[t]his is a pandemic of the unvaccinated", "[t]his continues to be a pandemic of the unvaccinated", "there's no excuse for anyone being unvaccinated", and that unvaccinated people would experience a winter of "severe illness and death".

10. On November 3, 2021, Mr. Lowe received a formal job offer from USDA and accepted that job offer the same day.

11. On November 16, 2021, Mr. Lowe reached out to his onboarding representative,

2

Mariah Rimmer, to notify her that Mr. Lowe required a reasonable accommodation to the vaccination requirement mandated by Executive Order 14043 because his sincerely held religious beliefs preclude vaccination.[1]

12. On February 14, 2022, Mr. Lowe started his position as a GS-12 Contract Specialist with USDA after the United States District Court for the Southern District of Texas issued a nation-wide injunction against enforcement of Executive Order 14043.

13. However, Mr. Lowe did not receive his first paycheck until March 21, 2022, after his supervisor intervened on his behalf.

14. Additionally, Mr. Lowe did not receive his work computer until six (6) weeks after starting his position.

15. In a sworn statement, USDA Zone Chief Justin Hicks ("Mr. Hicks") testified that "[t]ypically, if a computer is not provided by the start date, the employee receives it within one week of the start date."

16. On March 27, 2022, Mr. Lowe engaged in protected EEO activity by filing a formal complaint (informal complaint filed November 18, 2021), which named Human Resources officials including HR Specialist Mariah Rimmer ("HR Specialist Rimmer").

17. On April 4, 2022, Mr. Lowe learned that Human Resources did not transfer Mr. Lowe's Federal Employee Health Benefits ("FEHB") resulting in a lapse of his health insurance.

18. Mr. Lowe promptly filed a Human Resources Management ("HRM") Case, which was resolved in April 2022 with the restoration of his FEHB.

19. On April 26, 2022, Mr. Lowe emailed his supervisor to formally request a reasonable accommodation to USDA's mandatory COVID-19 Screening Testing Program for unvaccinated employees, and to clarify that Mr. Lowe did not consent to enrollment in USDA's COVID-19 Screening Testing Program.

20. In that email, Mr. Lowe informed his supervisor that, "the constant stress and anxiety of having my livelihood hung over my head, and of being made a scapegoat and pariah because

---

[1] USDA's reasonable accommodation process is the subject of a separate claim by Plaintiff that is currently on appeal with the EEOC.

of my very sincerely held religious beliefs continues to take a huge toll on me."

21. On May 11, 2022, Mr. Lowe received an email from USDA informing Mr. Lowe that he had been enrolled in USDA's COVID-19 Screening Testing Program.

22. As of May 11, 2022, the CDC's guidance on Workplace SARS-CoV-2 Testing stated, "Workplace-based testing should **not** be conducted without the employee's informed consent." (emphasis in original).

23. On July 2, 2022, Mr. Lowe's health insurance carrier, Blue Cross Blue Shield (BCBS) canceled Mr. Lowe's health insurance policy at USDA's behest "due to a termination of employment."

24. Thus, USDA terminated Mr. Lowe's FEHB a second time without Mr. Lowe's knowledge or consent.

25. On or around November 4, 2022, Mr. Lowe discovered the second lapse of his FEHB when his health care provider denied his insurance claim.

26. That denial of Mr. Lowe's insurance claim disrupted his relationship with that health care provider, causing Mr. Lowe emotional harm and physical hardship.

27. Mr. Lowe also had to pay out-of-pocket expenses that would have been covered if his FEHB were active.

28. On November 4, 2022, Mr. Lowe filed another HRM case to reinstate his FEHB, and Mr. Lowe also notified his supervisor of the situation.

29. On November 17, 2022, Mr. Lowe's FEHB were restored.

30. Between July 2, 2022, and November 17, 2022, insurance premiums continued to be deducted from Mr. Lowe's wages despite his FEHB being terminated during that period.

31. To date, Mr. Lowe has not received a satisfactory answer regarding where the funds intended for those premiums were directed nor has he been reimbursed for those deductions.

32. Human Resources Specialist Nikita Donovan ("HR Specialist Donovan") testified in a sworn statement that she handled approximately 50-60 federal employees who transferred to USDA during her time there, and that none of those employees experienced the same health insurance issue as Mr. Lowe.

4

33. HR Specialist Donovan also testified that she worked with HR Specialist Rimmer to manage Mr. Lowe's onboarding process.

34. HR Specialist Rimmer also identified herself as "the HR Specialist assigned to handle Complainant's onboarding" in a sworn statement.

35. HR Specialist Rimmer was identified as a Responding Official in two (2) of Mr. Lowe's EEO cases against USDA.

36. HR Specialist Rimmer stated that she became aware of Complainant's previous EEO action "in late 2021 to early 2022".

37. HR Specialist Rimmer also made false, unsupported, and derogatory remarks about Mr. Lowe in her sworn statement.

38. In December 2022, HR Specialist Rimmer transferred out of the USDA Forest Service.

39. Mr. Lowe received multiple conflicting explanations from agency officials regarding the termination of his FEHB.

40. However, Human Resources Supervisor Ryan Barthel ("HR Supervisor Barthel") testified in a sworn statement that the "multiple issues" Mr. Lowe experienced with his FEHB "were caused by [Mr. Lowe's] transfer not being properly processed and reviewed by the onboarding processing department…"

41. Between May 25, 2022, and June 16, 2023, Mr. Lowe made numerous attempts to obtain Adobe Acrobat DC Pro ("Adobe Pro") software from USDA because that software was necessary to perform his job duties.

42. USDA provided Adobe Pro software to every other Contract Specialist on Mr. Lowe's team, even providing it to a GS-7 Procurement Technician.

43. Mr. Lowe explained to his supervisor many times that not having Adobe Pro software made completing his job duties more difficult and more time consuming.

44. However, USDA never provided Mr. Lowe with Adobe Pro software.

45. In June 2023, after the COVID pandemic had officially ended, Mr. Lowe engaged his Supervisor and Zone Chief about the impact USDA's policies had on him.

46. Complainant also requested that USDA issue an official statement acknowledging the fact that both vaccinated and unvaccinated individuals are capable of transmitting COVID-19 in the hope that such a statement may relieve the negative stigma placed around unvaccinated employees during the pandemic.

47. However, USDA declined to issue such a statement.

48. During the COVID pandemic, Mr. Lowe was subjected to remarks by his co-workers including, but not limited to, that remaining unvaccinated is "worse than having a bunch of DUIs", that unvaccinated individuals "don't give a [expletive] about themselves or anyone else", and that unvaccinated individuals are "stupid, and you can't fix stupid."

49. Thus, Mr. Lowe lived with constant stress and anxiety that his unvaccinated status would be revealed to his co-workers, making him a pariah in the workplace.

50. Therefore, Mr. Lowe's time working for USDA was characterized by near constant stress and anxiety caused by Defendants' policies, statements, and actions.

51. On July 4, 2023, Mr. Lowe emailed his Supervisor and Zone Chief to inform them that that Mr. Lowe could no longer physically perform his job duties "as a direct result of the Agency's discriminatory and retaliatory conduct" towards him because Mr. Lowe's sincerely held religious beliefs preclude vaccination.

52. In that email, Mr. Lowe also observed that no reasonable person would continue working for an employer who subjected him to a hostile work environment because his sincerely held religious beliefs preclude vaccination.

53. USDA withheld Mr. Lowe's final paycheck until November 27, 2023.

54. On April 5, 2024, USDA issued a Final Agency Decision ("FAD") for Mr. Lowe's Constructive Discharge claim, initiating Mr. Lowe's right to file a civil action for that claim in this Court[2]. (See Exhibit A)

55. On April 30, 2024, USDA issued a Final Order for Mr. Lowe's Retaliation claim, initiating Mr. Lowe's right to file a civil action for that claim in this Court. (See Exhibit B).

---

[2] Mr. Lowe's disparate treatment and discriminatory harassment claims were not included under the FAD. Thus, those claims are still pending before the EEOC. Therefore, Plaintiff intends to amend the subject complaint to include those claims if the EEOC dismisses them.

**FIRST CLAIM FOR RELIEF**

**Violation of Title VII of Civil Rights Act (Retaliation)**

56. Mr. Lowe incorporates by reference paragraphs 1-55 of this Complaint as though set forth fully herein.

57. Mr. Lowe engaged in a protected activity by filing an EEO complaint against USDA, as alleged above.

58. HR Specialist Rimmer, the agency official responsible for Mr. Lowe's onboarding, was aware of Mr. Lowe's prior EEO activity, as alleged above.

59. HR Supervisor Barthel stated that the "onboarding processing department" was responsible for the termination of Mr. Lowe's FEHB, as alleged above.

60. USDA subsequently subjected Mr. Lowe to a materially adverse employment action by twice terminating Mr. Lowe's FEHB, as alleged above.

61. The temporal proximity between Mr. Lowe's EEO complaint and the termination of his FEHB constitutes a nexus between the protected activity and the adverse treatment Mr. Lowe experienced.

62. As a result of USDA's actions, Mr. Lowe suffered damages in an amount to be proven at trial, including economic damages, and damages related to the emotional harm he suffered such as mental anguish, loss of enjoyment of life, injury to professional standing, injury to reputation, and other non-pecuniary losses incurred as a result of USDA's retaliatory conduct.

63. Mr. Lowe should also recover his costs and be awarded reasonable attorney fees.

**SECOND CLAIM FOR RELIEF**

**Violation of Title VII of Civil Rights Act (Constructive Discharge)**

64. Mr. Lowe incorporates by reference paragraphs 1-55 of this Complaint as though set forth fully herein.

65. Mr. Lowe's job performance was satisfactory during the entirety of his employment with USDA.

66. USDA withheld Mr. Lowe's first and final paychecks, his work computer, and Adobe Pro software from him during Mr. Lowe's tenure with USDA, as alleged above.

67. Additionally, USDA was responsible for terminating Mr. Lowe's FEHB twice without Mr. Lowe's knowledge or consent, as alleged above.

68. Mr. Lowe was also enrolled in USDA's Screening Testing Program for unvaccinated employees without his consent and over his objections, as alleged above.

69. Additionally, Mr. Lowe's co-workers subjected him to demeaning and derogatory remarks regarding unvaccinated individuals, as alleged above.

70. In his final email to his supervisors, Mr. Lowe observed that no reasonable person would continue working for an employer who subjected him to a hostile work environment because his sincerely held religious beliefs preclude vaccination, as alleged above.

71. As a result of USDA's actions, Mr. Lowe suffered damages in an amount to be proven at trial, including economic damages, and damages related to the emotional harm he suffered such as mental anguish, loss of enjoyment of life, injury to professional standing, injury to reputation, and other non-pecuniary losses incurred as a result of Defendants' conduct.

72. Mr. Lowe should also recover his costs and be awarded reasonable attorney fees.

DATED this 3rd day of May 2024

By: __/s/__*Casey G. Lowe*_____
Casey G. Lowe (SBN 354186)
E-mail: lowe.casey@gmail.com
Telephone: (858) 736-7561
*Self-represented Plaintiff*

# Exhibit "A"

Final Agency Decision ("FAD")
Dated April 5, 2024



**United States Department of Agriculture**

Office of the Assistant Secretary for Civil Rights

Center for Civil Rights Enforcement

1400 Independence Avenue SW

Washington, DC 20250

**UNITED STATES DEPARTMENT OF AGRICULTURE**
**Center for Civil Rights Enforcement**

| | |
|---|---|
| Casey Lowe | ) |
|     Complainant | ) |
| | ) |
|       v. | ) USDA Complaint No.: FS-2023-00526 |
| | ) |
| Thomas J. Vilsack | ) |
| Secretary | ) |
| Department of Agriculture | ) |
|     Agency | ) |
| | ) |

## Final Agency Decision

## Introduction

In accordance with the Equal Employment Opportunity Commission (EEOC) regulations at 29 C.F.R. §1614.302, this is the final decision of the United States Department of Agriculture (USDA) on this complaint.

## Issue Presented

Whether Complainant was constructively discharged from his GS-12 Contract Specialist position in Nevada City, California, based on religion (Christian) and reprisal for prior EEO activity when he resigned from his position on July 4, 2023.

## Procedural History

Complainant contacted the EEO Counselor to initiate this complaint on July 6, 2023. Complainant had a final interview with the EEO Counselor and was issued a Notice of Right to File a Formal Complaint on August 4, 2023. Complainant filed this formal complaint on August 13, 2023. The Agency acknowledged the formal complaint on August 17, 2023. The Agency accepted the claims in the formal complaint on September 15, 2023. The Agency conducted an investigation between October 4, 2023, and December 22, 2023. Following the investigation, Complainant was notified of the right

to have an EEOC hearing regarding the non-mixed[1] claims in the complaint or, alternatively, a final agency decision (FAD) by the Agency.[2]  Complainant was notified that the mixed claim of constructive discharge would be immediately adjudicated in a FAD in accordance with 29 CFR §1614.302(d)(2).  This FAD, addressing only the mixed claim of constructive discharge, is issued in accordance with 29 CFR §1614.302.

### Factual Background

Complainant was employed as a GS-12 Contract Specialist, Procurement and Property Services, USDA Forest Service, in Nevada City, California, at the time relevant to this complaint.  Complainant's first-level supervisor during the time relevant to this complaint was the Supervisory Contract Specialist in Ridgefield, Washington (Responsible Management Official 1 (RMO1)) (religion:  Christian).  Complainant's second-level supervisor was the Zone Chief in Cave Creek, Arizona (Responsible Management Official 2 (RMO2)) (religion:  Christian).  Complainant identifies his prior EEO activity as opposing discrimination.  Specifically, Complainant testified, "I opposed practices that were objectively discriminatory. Specifically, I opposed management's discriminatory vaccination mandate, and management's discriminatory testing mandate for unvaccinated employees."  Complainant contends he was discriminated and retaliated against based on his religion and prior EEO activity by, amongst others, the Secretary of USDA and the President of the United States of America. (Report of Investigation (ROI), Exhibit (Ex.) 8, pp. 291-294)

### Statement of Facts

**Whether Complainant was constructively discharged from his GS-12 Contract Specialist position in Nevada City, California, based on religion (Christian) and reprisal for prior EEO activity when he resigned from his position on July 4, 2023.**

*Complainant's Allegations*

Complainant testified he was forced out of his position by management's harassment of him based on his religion when they took actions based on his refusal to receive the COVID-19 vaccination.  Complainant asserts, "On July 4, 2023, I informed [RMO1 and RMO2] that I could no longer physically perform my job duties as a direct result of the Agency's discriminatory and retaliatory conduct towards me because my sincerely held religious beliefs preclude vaccination."  Complainant avers, "I did not resign my position. I was constructively discharged from my position because I could no longer physically perform my job duties as a direct result of the Agency's discriminatory and retaliatory conduct towards me."  Complainant contends, "My sincerely held religious beliefs

---

[1] Mixed claims refer to claims that are appealable to the Merit Systems Protection Board (MSPB).  Non-mixed claims do not have MSPB rights and are under the jurisdiction of EEOC.

[2] In addition to the discriminatory constructive discharge claim addressed herein, this complaint number (FS-2023-00526) includes two separate disparate treatment claims and a claim of discriminatory harassment, which are non-mixed claims, appealable to EEOC, which will be adjudicated separately from the constructive discharge claim.

preclude vaccination. However, the Executive Branch, generally, and the USDA Forest Service, specifically, were very vocal regarding their intent to discriminate and harass those of us whose sincerely held religious beliefs preclude vaccination." Complainant listed several incidents he perceived as harassment against him including public statements by the President encouraging Americans to receive the vaccination. Complainant also asserts he was harassed by the Agency when his pay was delayed at times in 2022, when there was an interruption in his health benefits, when he was required to be tested for COVID-19 because he refused to receive the vaccination, and when his medical information related to being unvaccinated was kept in a database. Complainant asserts the harassment by the Agency rendered him physically unable to perform his duties, causing nausea and headaches and resulting in his constructive discharge. Complainant avers his constructive discharge was due to discrimination based on religion because he was harassed due to not receiving the vaccination and did not receive the vaccination due to his religious objections. Complainant states his constructive discharge was due to reprisal for prior EEO activity because Human Resources (HR) harassed him worse after he filed discrimination complaints than before he filed the complaints. (ROI, Ex. 8, pp. 295-305)

*Agency's Responses*

RMO1 testified, "On July 3, 2023, [Complainant] sent me an email with this resignation to be effective immediately. I did not read the email until July 5, 2023, due to the Federal Holiday. I have no evidence that he was forced to resign in any way, he did so of his own accord, and at a time when my supervisor especially was actively attempting resolution for [Complainant's] concerns." RMO1 avers, "The vaccination policy had been rescinded by the time I started with the Forest Service and became his supervisor, and I'm not aware that a testing policy ever existed, though it may have. I do not entirely understand the source of the stress, therefore, but he did express he felt it and I did my best to be sympathetic." (ROI, Ex. 11, pp. 424, 425)

RMO2 testified, "On July 4, 2023, at 9:52 p.m., [Complainant] sent an email to [RMO1] (and courtesy copied me) informing us that he was resigning from his position effective July 5, 2023." RMO2 asserts, "[Complainant] was hired as, and designated as, a 100% remote employee and therefore was not required to vaccinate, test, or enter a federal facility for his official position at any time during his employment with the Forest Service. Despite never having to vaccinate or test, [Complainant] claims he incurred significant stress and mental/physical harm due to the uncertainty of the federal vaccine mandate and the Agency's position/response to the mandate. Even after the federal vaccine mandate was rescinded, [Complainant] was still unhappy with the Forest Service executive leadership's communication regarding unvaccinated employees. He wanted the Forest Service's leadership, beginning with the Deputy Director of Business Operations, to publicly apologize for any mistreatment and/or discrimination of the Agency's unvaccinated employees and ensure in writing that discrimination of unvaccinated employees would never again occur. He felt the Agency targeted him, discriminated, and retaliated against him specifically because he was an unvaccinated employee-which caused him stress and health issues." RMO2 avers, "[Complainant] was not forced to

resign; he did so of his own volition. Yes, in his resignation email he indicated that his reasoning was that 'No reasonable person would continue subjecting himself or herself to the range of health problems that I have been experiencing as a direct result of the Agency's discriminatory and retaliatory conduct towards me because my sincerely held religious beliefs preclude vaccination.'"  RMO2 contends, "To my direct knowledge, no he wasn't subject to discrimination. He was treated similarly to all other Forest Service employees. Issues that arose throughout the duration of his employment, for example delays in onboarding, obtaining Adobe Acrobat software, inexplicable lapse and reinstatement of his health insurance, [Complainant] perceived as direct retaliation for his unvaccinated status." (ROI, Ex. 10, pp. 403-405)

*Complainant's Rebuttal*

Complainant, in his rebuttal statement, insists that he did not resign from his position but that, rather, he was constructively discharged due to the discriminatory and retaliatory motives of management officials, the Secretary of USDA and the President of the United States of America.  Complainant did not present evidence of discrimination or reprisal in his rebuttal. (ROI, Ex. 9, pp. 365-389)

## **Applicable Law**

This employment discrimination case arises under Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e. Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  The statute also protects individuals from reprisal for seeking protection under the law.

A complainant may prevail in a disparate treatment claim using either direct or circumstantial evidence of discrimination.  Direct evidence of discrimination consists of "evidence which, if believed, would prove the existence of discrimination without inference or presumption." Carter v. City of Miami, 870 F.2d 578, 581-82 (11th Cir. 1989).  In the absence of direct evidence, the complainant must rely on circumstantial evidence to prove discriminatory intent using the burden-shifting analysis first enunciated in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973).  Under the McDonnell Douglas framework, a complainant must initially establish a *prima facie* case of discrimination by presenting facts that, if left unexplained, give rise to the presumption of intentional discrimination.  McDonnell Douglas, 411 U.S. at 802.

Once the complainant establishes a *prima facie* case of discrimination, the burden shifts to the agency to articulate legitimate, nondiscriminatory reasons for its actions.  Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981).  In other words, the agency "…must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993) (*citing* Burdine, 450 U.S. at 254-55, n.8).  Finally,

the burden returns to the complainant to prove, by a preponderance of the evidence, that the agency's ostensibly legitimate and nondiscriminatory reasons were pretextual. Cooper v. Federal Reserve Bank of Richmond, 467 U.S. 867, 875 (1984); Burdine, 450 U.S. at 253-56.

Pretext can be established directly by persuading the fact finder that the agency was more likely than not motivated by a discriminatory reason or indirectly by showing that the agency's proffered reason is unworthy of credence. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000) (*citing* Burdine, 450 U.S. at 248, 255). However, the agency's proffered reason cannot be considered pretext "unless it is shown both that the reason was false and the discrimination was real." Hicks, *supra*. "Proving the agency's reason false becomes part of the greater enterprise of proving that the real reason was intentional discrimination." Id. Thus, it is not sufficient for the fact finder to merely "*dis*believe the employer; the fact finder must believe the complainant's explanation of intentional discrimination." Id. at 519 (emphasis in original).

**Discrimination Based on Religion**

To establish a *prima facie* case of discrimination based on a protected class, the complainant must generally show that he/she: (1) is member of a protected class; (2) was subjected to an adverse employment action; and (3) was treated less favorably than similarly situated employees who are not members of the complainant's protected class. Williams v. Department of Education, EEOC Request No. 05970561 (August 6, 1998); Enforcement Guidance on O'Connor v. Consolidated Coin Caterers Corp., EEOC Notice No. 915.002 (September 18, 1996).

An adverse employment action is an action taken by the agency, which is "more disruptive than a mere inconvenience or an alteration of job responsibilities." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir.2000) (*quoting* Crady v. Liberty Nat'l Bank & Trust Co. of Ind., 993 F.2d 132, 136 (7th Cir.1993)). Examples of adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." Id. Moreover, the "similarly situated" prong of the *prima facie* analysis requires the complainant to show that another employee, who is not in the complainant's protected class, was comparable to complainant. In general, this requires a showing that all relevant aspects of the complainant's job are the same or like that of the comparator, such as supervisors, job functions, and conduct. *See* Anderson v. Dept of Treasury, EEOC Appeal No. 01A22092 (March 13, 2003); Stewart v. Dept of Defense, EEOC Appeal No. 01A02890 (June 27, 2001); Jones v. U.S. Postal Service, EEOC Appeal No. 01983491 (April 13, 2000).

**Reprisal**

Reprisal claims are distinct from disparate treatment and harassment claims and require a slightly different analytical framework. A complainant can establish a *prima facie* case of reprisal discrimination by showing that: 1) she/he engaged in activity protected under Title VII; 2) the alleged discriminating officials were aware of her/his protected activity; 3) she/he was disadvantaged by an Agency action contemporaneous with or subsequent to his/her protected activity; and 4) a nexus exists between the protected activity and the adverse action. The causal connection may be shown by evidence that the adverse action followed the protected activity within such a period of time and in such a manner that a reprisal motive is inferred. *See* McDonnell Douglas, 411 U.S. 792; Hochstadt v. Worcester Foundation for Experimental Biology, Inc., 425 F. Supp. 318, 324 (D. Mass.), aff'd, 545 F.2d 222 (1st Cir. 1976); Simens v. Department of Justice, EEOC Request No. 05950113 (March 28, 1996).

The EEOC's policy is to view reprisal claims with a broad view of coverage. Carroll v. Dep't of Army, EEOC Request No. 05970939 (April 3, 2000), EEOC Compliance Manual, EEOC Order No. 915.003, "Retaliation," pp. 8-15 (May 20, 1998). The EEOC, in Carroll, held that "claimed retaliatory actions which can be challenged are not restricted to those which affect a term or condition of employment." Therefore, a complainant is protected from any action which is reasonably likely to deter or suppress protected EEO activity. Id.

To establish a causal connection, the complainant must show, by a preponderance of the evidence, that the persons responsible for the conduct at issue had knowledge of her/his prior EEO activity at the time the challenged conduct occurred. *See* Mason v. Tennessee Valley Authority, EEOC Appeal No. 01840126 (December 31, 1984). The complainant cannot prevail simply by showing that someone in the agency had knowledge of the protected activity. Odom v. U.S. Postal Service, EEOC Appeal No. 01842223 (June 2, 1986). Additionally, where the complainant seeks to establish a causal connection based on the temporal proximity between the agency's knowledge of the protected activity and the agency's actions, the proximity must be "very close." Clark County School District v. Breeden, 121 S.Ct. 2264 (2001) (*citing* O'Neal v. Ferguson Construction Co., 237 F.2d 1248, 1254 (10th Cir. 2001); *see also* Richmond v. Oneok, Inc., 120 F.3d 205, 209 (10th Cir.1997) (3-month period insufficient); Hughes v. Derwinski, 967 F.2d 1168, 1174-75 (7th Cir.1992) (4-month period insufficient).

**Constructive Discharge**

The central question in a constructive discharge claim is whether the employer, through its unlawful discriminatory behavior, made the employee's working conditions so difficult that any reasonable person in the employee's position would feel compelled to resign. Carmon-Coleman v. Dep't of Def., EEOC Appeal No. 07A00003 (Apr. 17, 2002). The Commission has established three elements which a complainant must prove to substantiate a claim of constructive discharge: (1) a reasonable person in the complainant's position would have found the working conditions intolerable; (2) conduct

that constituted discrimination against the complainant created the intolerable working conditions; and (3) the complainant's involuntary resignation resulted from the intolerable working conditions. See Walch v. Dep't of Justice, EEOC Request No. 05940688 (Apr. 13, 1995).

## Analysis and Findings

**Whether Complainant was constructively discharged from his GS-12 Contract Specialist position in Nevada City, California, based on religion (Christian) and reprisal for prior EEO activity when he resigned from his position on July 4, 2023.**

*Constructive Discharge*

Complainant failed to prove that he was subjected to intolerable working conditions or to conduct that violates Title VII. The Commission has established three elements which a complainant must prove to substantiate a claim of constructive discharge: (1) a reasonable person in the complainant's position would have found the working conditions intolerable; (2) conduct that constituted discrimination against the complainant created the intolerable working conditions; and (3) the complainant's involuntary resignation resulted from the intolerable working conditions. See Walch, EEOC Request No. 05940688.

In this case, Complainant asserts he was subjected to harassment based on his religion and prior EEO activity resulting in intolerable working conditions when the President of the United States issued public notices encouraging Americans to receive the COVID-19 vaccination. However, though Complainant expressed his own personal perspective that the messages were discriminatory based on his religious beliefs, Complainant did not present evidence to support his subjective perspective or to establish a nexus between his religion and the messages issued by the President. Complainant also failed to present evidence to show how the messages created intolerable working conditions for him, especially considering that he was not subjected to the vaccination requirement.

Complainant also claims that he was harassed when his pay was delayed at times in 2022, when there was an interruption in his health benefits, when he was required to be tested for COVID-19 because he refused to receive the vaccination, and when his medical information related to being unvaccinated was kept in a database. However, none of these issues have been shown to have been related to his religion or his prior EEO activity. While Complainant states that he believes that the issues were due to reprisal for his refusal to receive the COVID-19 vaccination, no evidence in the record supports his assertion.

The evidence of record establishes that Complainant, as a 100% remote employee, was not required to vaccinate, test, or enter a federal facility for his official position at any time during his employment with the Forest Service.  Thus, Complainant was not subjected to any of the issues he claimed led to his intolerable working conditions and the evidence of record establishes that he only claimed to be in intolerable working conditions over the uncertainty of what restrictions may be placed on unvaccinated individuals in the future.

Based on the entirety of evidence in the record, we find that Complainant failed to prove that he was subjected to intolerable working conditions as claimed.  The evidence also establishes that Complainant failed to prove that he was subjected to conduct that violated Title VII.  No evidence in the record supports Complainant's subjective contention that he was subjected to religious discrimination or reprisal.

Therefore, Complainant failed to prove that he was constructively discharged in violation of EEO laws as claimed when he resigned from his agency position effective July 5, 2023.

<u>Conclusion</u>

The weight of the evidence indicates discrimination nor harassment occurred with respect to the issues in this complaint. Accordingly, no relief or corrective action is warranted or ordered in this matter.

**APPEAL RIGHTS**

This is the final decision of the USDA on the cited complaint.  The following are the only rights available to challenge this decision.

**APPEAL TO THE MERIT BOARD SYSTEMS PROTECTION BOARD (MSPB)**

In accordance with 5 C.F.R. § 1201, if Complainant is dissatisfied with this final agency decision, Complainant may file an appeal regarding the mixed claim in the decision to the Merit Systems Protection Board (MSPB), <u>not</u> to the Equal Employment Opportunity Commission (EEOC)**,** <u>within 30 calendar days</u> of receipt this final agency decision. Appeals to the MSPB should be filed using MSPB's e-Appeal online website ([https://e-appeal.mspb.gov/](https://e-appeal.mspb.gov/)).  Alternatively, the MSPB Appeal Form 185 may be delivered to the MSPB regional or field office serving the area where Complainant's duty station was located when the action was taken:

**Merit Systems Protection Board**
**Western Regional Office**
**1301 Clay Street, Suite 1380N**
**Oakland, CA 94612-5217**
**[westernregionaloffice@mspb.gov](mailto:westernregionaloffice@mspb.gov)**

If Complainant wishes a hearing, Complainant may make such a request when filing the appeal.  A copy of the appeal must be submitted to this office. If Complainant is appeals to the MSPB and is dissatisfied with the MSPB's decision, Complainant may then ask the EEOC to review the MSPB's decision.

## CIVIL ACTION IN FEDERAL DISTRICT COURT

You also have the right to file a civil action in an appropriate United States District Court. If you choose to file a civil action, you may do so:

(1) within thirty (30) calendar days of receipt of this decision, unless an appeal is filed with the MSPB; or

(2) within thirty (30) calendar days of receipt of notice of the final decision or action taken by the MSPB if you do not file a petition for consideration with the EEOC; or

(3) within thirty (30) calendar days of receipt of notice that the EEOC has determined not to consider the decision of the MSPB; or

(4) within thirty (30) calendar days of receipt of notice that the EEOC concurs with the decision of the MSPB; or

(5) within thirty (30) calendar days of receipt of notice that the MSPB concurs in, and adopts in whole, the decision of the EEOC; or

(6) if the MSPB does not concur with the decision of the EEOC, and the MSPB reaffirms its initial decision or reaffirms its initial decision with a revision, within thirty (30) calendar days of the receipt of notice of the decision of the Special Panel; or

(7) after one hundred and twenty (120) calendar days from the date of filing an appeal with the MSPB if the MSPB has not yet made a decision; or

(8) after one hundred and eighty (180) calendar days from the date of filing a petition for reconsideration with the EEOC if there is no decision by the EEOC, reconsideration decision by the MSPB or decision by the Special Panel.

You must name the person who is the official agency head or department head as the defendant.  Agency or department means the national organization, and not just the local office, facility, or department in which you might work.  Do not name just the agency or department.   In your case, you **must** name **Thomas J. Vilsack, Secretary of Agriculture**, as the defendant.  You must also state the official title of the agency head or department head.  Failure to provide the name or official title of the agency head or department head may result in dismissal of your case.

If you decide to file a civil action under Title VII or under the Rehabilitation Act, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security.  The grant or denial of the request is within the sole discretion of the Court.  Filing a request for an attorney does not extend your time in which to file a civil action.  Both the request and civil action <u>MUST BE FILED WITHIN THE STATUTORY TIME LIMITS STATED IN THIS NOTICE</u>.

Unless an appeal is filed with the MSPB, failure to file a civil action within thirty (30) calendar days may result in the dismissal of your civil action.  Filing a lawsuit under 29 C.F.R. §1614.310 shall terminate processing an appeal before the MSPB or the EEOC.  If a civil action is filed subsequent to filing an appeal with the MSPB, the parties are requested to notify the MSPB in writing.  If a civil action is filed subsequent to filing a request for consideration with the EEOC, the parties are requested to notify the EEOC in writing.

April 5, 2024

_____          _____

Kirk Perry                                                      Date
Director
Employment Adjudication Division

**U. S. DEPARTMENT OF AGRICULTURE**
**Center for Civil Rights Enforcement**
**Complaint of Employment Discrimination**

Complainant:       Casey Lowe

Complaint No.:     FS-2023-00526

Agency:           Forest Service

**Certificate of Service**

I certify that the documents listed were sent on this date by email (unless otherwise specified) to:

Complainant:                Casey Lowe
Lowe.Casey@gmail.com

Complainant's Representative:   None

Agency Head:            Randy Moore
Chief
Forest Service
Randy.moore@usda.gov

Agency Liaison:          Tracey Troutman
Acting, National Civil Rights Director
Civil Rights Office
Forest Service
Tracey.troutman@usda.gov

Enclosures:    Final Decision dated:  04-05-2024
MSPB Appeal Form 185  (to Complainant and representative, if any, only)

Email by: _____

# Exhibit "B"
Final Order
Dated April 30, 2024



**United States Department of Agriculture**

**Office of the Assistant Secretary for Civil Rights**

Center for Civil Rights Enforcement

1400 Independence Avenue SW

Washington, DC 20250

## UNITED STATES DEPARTMENT OF AGRICULTURE
### Center for Civil Rights Enforcement

| | |
|---|---|
| _____ ) | |
| Casey Lowe                        ) | |
|          Complainant              ) | |
|                                   ) | |
|          v.                       ) | USDA Complaint No.: FS-2023-00087 |
|                                   ) | EEOC No.: 530-2023-00253X |
| Thomas J. Vilsack                 ) | |
| Secretary                         ) | |
| Department of Agriculture         ) | |
|          Agency                   ) | |
| _____ ) | |

## FINAL ORDER

In accordance with 29 C.F.R. §1614.110, this is the final order of the United States Department of Agriculture (USDA) regarding EEOC No. 530-2023-00253X; USDA Complaint No. FS-2023-00087.

On April 24, 2024, the Equal Employment Opportunity Commission Administrative Judge (EEOC AJ) issued a Decision and Order Entering Judgment in favor of the Agency, pursuant to 29 C.F.R. §1614.109(g). It is the decision of the USDA to fully implement the Decision of the EEOC AJ.

The Complainant has the right to file an appeal of the EEOC AJ's decision and the Agency's final order. Enclosed is a notice of the Complainant's appeal rights.

*Kenneth J. Baisden, Sr.*

_____          April 30, 2024
Kenneth J. Baisden for/                  Date
D. Leon King, Executive Director
Center for Civil Rights Enforcement
Office of the Assistant Secretary for Civil Rights

Enclosure

## APPEAL RIGHTS

This is the final order of USDA on the complaint cited herein.  The following rights are available to challenge this decision.

## APPEAL TO THE EEOC

You **may** file a separate appeal of this final action and the EEOC AJ's decision to the EEOC within **thirty (30) days of receipt** of the final action.  However, you need not file a separate appeal to have the EEOC review USDA's action.  As a general rule, and in the absence of a separate appeal from you, the EEOC will review only USDA's decision not to fully implement the EEOC AJ's decision.  Where, however, you contend that the EEOC AJ erred either in any rulings made during the pendency of the action or in the decision, you **must** file an appeal from USDA's final action to challenge such errors, within the thirty (30) day time limit.  Any such appeal **may** be mailed to:

**Equal Employment Opportunity Commission**
**Office of Federal Operations**
**Post Office Box 77960**
**Washington, DC 20013**

As an alternative to mailing, the appeal may be hand-delivered to:

**Equal Employment Opportunity Commission**
**Office of Federal Operations**
**131 M Street, NE**
**Suite 5SW12G**
**Washington, DC 20507**

The appeal may be sent by fax to **(202) 663-7022**, as a further alternative.

If you desire to submit your appeal electronically, send to the EEOC Public Portal:

https://publicportal.eeoc.gov/Portal/Login.aspx - (Public Portal)

If there is an attorney of record, thirty (30) calendar day time limit within which to appeal shall be calculated from the date of receipt of this decision by the attorney. In all other cases, the thirty (30) calendar day time limit within which to appeal shall be calculated from the date of your receipt of this decision.

The appeal shall be deemed filed on the day it is postmarked, or in the absent of a postmark, on the date it is received by the EEOC.

The enclosed **EEOC Form 573, Notice of Appeal/Petition**, should be used in filing an appeal. What is being appealed should be indicated on that form. At the same time information is provided to the EEOC (to include a copy of the Notice of Appeal and any submissions in support of the appeal), there must be a service certification that a copy of the submission has been submitted to the USDA/Employment Complaints Division and the date and method of service. A copy of the appeal and any submissions in support thereof shall be forwarded to the Agency at the following address:

**U. S. Department of Agriculture**
**Center for Civil Rights Enforcement**
**Employment Complaints Division**
**1400 Independence Avenue, S.W.**
**Washington, DC 20250-9440**

In or attached to the appeal to the EEOC, you must certify the date and method by which the copy of the appeal was served on the Agency Representative and USDA.

If your appeal is not filed within the thirty (30) day time limit, the appeal shall be dismissed by the EEOC as untimely. The appeal shall be deemed filed on the day it is postmarked, or in the absence of a postmark, on the date it is received by the EEOC. If there is an attorney of record, the thirty (30) day time limit shall be calculated from the date of receipt of the final action by the attorney. In all other cases, the thirty (30) day time limit shall be calculated from the date of your receipt of the final order.

Any statement or brief in support of your appeal must be submitted to the EEOC within thirty (30) calendar days of filing the notice of appeal. The Office of Federal Operations, EEOC accepts statements or briefs in support of appeals by facsimile transmittal, provided that they are no more than ten (10) pages long.

It is USDA's responsibility to submit the complaint file to the Office of Federal Operations, EEOC, within thirty (30) days of initial notification that an appeal has been filed.

## CIVIL ACTION IN FEDERAL DISTRICT COURT

You also have the right to file a civil action in an appropriate United States District Court. If you choose to file a civil action, you may do so:

- Within ninety (90) days of receipt of the final action if no appeal has been filed; or

- Within ninety (90) days after receipt of the EEOC's final decision on appeal; or

- After one hundred and eighty (180) days from the date of filing an appeal with the EEOC if there has been no final decision by the EEOC.

You must name the person who is the official agency head or department head as the defendant. Agency or department means the national organization, and not just the local office, facility, or department in which you might work. Do not name just the agency or department. In your case, you **must name Thomas J. Vilsack, Secretary of Agriculture**, as the defendant. You must also state the official title of the agency head or department head. Failure to provide the name or official title of the agency head or department head may result in dismissal of your case.

If you decide to file a civil action, under Title VII or under the Rehabilitation Act, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. **The grant or denial of the request is within the sole discretion of the Court**. Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and civil action MUST BE FILED WITHIN NINETY (90) CALENDAR DAYS of the date you receive the final action by USDA or the EEOC's decision on appeal.

Unless an appeal is filed with the EEOC, failure to file a civil action within ninety (90) calendar days may result in the dismissal of your civil action. Filing a civil action under 29 C.F.R. §1614.408 shall terminate processing an appeal before the EEOC. If a civil action is filed subsequent to filing an appeal with the EEOC, the parties are requested to notify the EEOC in writing.

**U. S. DEPARTMENT OF AGRICULTURE**
**Center for Civil Rights Enforcement**
**Complaint of Employment Discrimination**


Complainant:           Casey Lowe

Complaint No.:         FS-2023-00087

Agency:                Forest Service

### Certificate of Service

I certify that the documents listed were sent on this date by electronic mail (unless otherwise specified) to:

Complainant:                    Casey Lowe
                                Lowe.casey@gmail.com

Complainant's Representatives:  jrichard@gelawyer.com
                                Kowen-efile@gelawyer.com

Agency Head:                    Randy Moore
                                Chief
                                Forest Service
                                Randy.Moore@usda.gov

Agency Liaison:                 Tracey Troutman
                                Acting Civil Rights Director
                                Civil Rights Office
                                Forest Service
                                Tracey.Troutman@usda.gov

Agency Representatives:         Debra Harrell, Esq.
                                Office of the General Counsel
                                Debra.Harrell3@usda.gov

                                Spenser Sullivan, Esq.
                                Office of the General Counsel
                                Spenser.Sullivan@usda.gov

Administrative Judge:                    Stuart G. Cox, Administrative Judge
                                         U.S. Equal Employment Opportunity
                                         Commission
                                         Seattle Field Office
                                         s.cox-efilebox@eeoc.gov


Enclosures:     Final Order dated:
EEOC Form 573 (to the Complainant and representative, if any, only)

Email by: