IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASEY LOWE,<br><br>       Plaintiff,<br><br>   v.<br><br>THOMAS J. VILSACK,<br><br>       Defendant. | No. 2:24-CV-1287-DMC<br><br><br>ORDER |

Plaintiff brings this civil action. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c); see also ECF No. 12 (minute order reassigning action). Pending before the Court is Plaintiff's motion for sanctions, ECF No. 36.

**I. BACKGROUND**

Plaintiff filed a motion for sanctions on October 2, 2025, ECF No. 36, Defendant filed an opposition, ECF No. 44, and Plaintiff filed a reply, ECF No. 47. The Court conducted a hearing for the matter on December 10, 2025, ECF No. 43. Plaintiff seeks sanctions "for misconduct by defense counsel at the deposition [] pursuant to Rule 30 (d)(2)." ECF No. 36, pg. 1. Defendant opposes such sanctions, arguing such motion is procedurally defective and substantively, counsel's behavior was appropriate. See ECF No. 44. Plaintiff contends that

Defendant did not argue the substance of Plaintiff's motion and asserts the motion is procedurally proper, arguing the motion for sanctions should be granted. See ECF No. 47

### A. **Plaintiff's Motion for Sanctions, ECF No. 36**

Plaintiff seeks sanctions for Defendant's counsel's, behavior during the deposition of Ms. Blount, Defendant's National Pandemic Coordinator. See ECF No. 36. Plaintiff argues that Defendant's counsel conducted himself in a way that "warrants accountability and reparation." Id. at 14. According to Plaintiff, the deposition "centered around Defendant's COVID-19 screening testing program, which was mandatory for unvaccinated employees, but optional for vaccinated employees." Id. at 2. Plaintiff describes the misconduct as follows:

> On numerous occasions during that deposition, defense counsel issued copious speaking objections (many of which appeared to be calculated to coach the witness), instructed the witness not to answer when no privilege applied, hurled baseless accusations of harassment at Plaintiff, and otherwise made it impossible for Plaintiff to obtain full and complete testimony from Ms. Blount as discussed herein.

Id.

Plaintiff provides a transcript "of the most egregious examples" and offers to provide a full transcript to the Court, if needed. Id. Plaintiff contends that Defendant's counsel violated the rules of conduct for depositions and "the witness seemed to play along with defense counsel's obstruction and joined in the efforts of her counsel to frustrate the deposition by giving rambling, vague, and non-responsive answers to Plaintiff's questions." Id. Plaintiff argues that failure to issue sanctions "will encourage defense counsel's aggressive and erratic conduct not only toward Plaintiff, but also toward other pro se litigants in the future." Id. at 13. Plaintiff requests monetary sanctions, arising from the time Plaintiff spent preparing for the deposition, a second deposition of Ms. Blount, and any other sanctions this Court sees necessary. Id. at 14.

Plaintiff asserts sanctions under Rule 30(d)(2) do not require a finding of bad faith, citing Ninth Circuit District Court cases in support. Id. at 3 (citing BNSF Ry. Co. v. San Joaquin Valley R.R. Co., No. 08CV1086-AWI-SMS, 2009 U.S. Dist. LEXIS 111569, at *9 (E.D. Cal. Nov. 17, 2009); Robinson v. Chefs' Warehouse, No. 15CV5421-RS(KAW), 2017 U.S. Dist. LEXIS 40824, at *7 (N.D. Cal. Mar. 21, 2017), on reconsideration, 2017 U.S. Dist. LEXIS 93339

(N.D. Cal. June 16, 2017). Plaintiff acknowledges that this Court previously declined to award attorney's fees to Plaintiff as a pro se litigant but asserts such ruling is distinguishable because there, Plaintiff sought sanctions requested pursuant to Rule 37, whereas here, Plaintiff seeks sanctions pursuant to Rule 30 (d)(2). Id. at 13. Plaintiff additionally states that "defense counsel's conduct seemed to escalate following this Court's denial of Plaintiff's request for attorney fees pursuant to Plaintiff's Motion to Compel." Id. Plaintiff cites two cases in this District where fees were awarded to pro se litigants and quotes the Federal Circuit, which held that "failure to award those fees 'would place a pro se litigant at the mercy of an opponent who might engage in otherwise sanctionable conduct.'" Id. (quoting Pickholtz v. Rainbow Technologies, Inc., 284 F.3d 1365, 1377 (Fed. Cir. 2002) and citing Jacobs v. Scribner, No. 1:06-cv-01280-AWI-GSA-PC, VLEX-891259898, at *2 (E.D. Cal. Jan. 11, 2011); Timberland v. Mascarenas, et al., No. 1:16-cv-00922-NONE-GSA-PC, VLEX- 887343824, at *5-6 (E.D. Cal. March 18, 2020)).

Plaintiff argues that Defendant's counsel "issued twenty-four (24) speaking objections in two (2) hours and thirty-six (36) minutes, averaging a speaking objection roughly every six-and-a-half (6.5) minutes according to Plaintiff's calculations. (citation omitted) [s]pecifically, defense counsel instructed the witness to answer "if you can" eighteen times, and to answer "if you understand the question" six times. (citation omitted)." Id. at 4. Plaintiff argues that such objections "constitute coaching the witness by signaling the witness to respond that she could not understand or otherwise answer Plaintiff's questions." Id. Plaintiff additionally takes issue with the manner Defendant's counsel made the objections, contending they "were aggressively shouted at Plaintiff . . . [which] imped[d] Plaintiff's ability to examine the witness." Id.

Plaintiff contends that this behavior interfered with Plaintiff's ability to conduct the deposition. See id. Plaintiff provides citations to Exhibit 1 in support of this argument, asserting that, during the deposition, Defendant's counsel responded to Plaintiff's questions with statements such as "if you understand that question," which resulted in Ms. Blount stating "I don't quite understand the question though. [See Exhibit 1, Blount Dep. 72:11-24]," which "prevented Plaintiff from obtaining a responsive answer from Ms. Blount." Id. at 5-6 (quoting

3

Exhibit 1, ECF No. 36-1, pg. 16). According to Plaintiff, when he sought to make his questions clearer for Ms. Blount, Defendant's counsel "weaponized argumentative and suggestive speaking objections to disrupt Plaintiff's questioning . . . defense counsel's obstruction extended to frustrating Plaintiff's good faith attempts to clarify his questions make[ing] defense counsel's conduct even more serious." Id. at 6.

Plaintiff next argues the instructions to not answer "further obstructed" Plaintiff's ability to depose Ms. Blount. Id. at 7. Plaintiff asserts that "defense counsel instructed Ms. Blount not to answer Plaintiff's questions five times when no matter of privilege existed . . . [which] deprived Plaintiff of opportunities to elicit admissions of guilt from a key witness who was integral to implementing Defendant's discriminatory COVID-19 policies as detailed below." Id. at 8 (citing Exhibit 1, Blount Dep. 108:13, 109:15-16, 110:5-6, 110:9-10, 111:4, ECF No. 36-1, pgs. 27-30). Plaintiff additionally asserts that if Defendant's counsel, in good faith, "believed Plaintiff's questions constituted harassment, the proper procedure would be to terminate the deposition pursuant to Rule 30(d)(3), and seek relief from this Court," and Defendant's counsel did not "because he knew Plaintiff's questions were not harassing." Id. at 10.

Finally, Plaintiff contends that the "baseless accusations obstructed Plaintiff's attempts to examine the witness and needlessly prolonged the deposition by forcing numerous digressions where Plaintiff had to defend himself against those accusations." Id. (citing Plaintiff Exhibit 1, Blount Dep. 83:23-85:9). Plaintiff asserts Defendant's counsel then "turned his ire to the Guardian from Readback Active Reporting . . ." Id. at 12 (citing Exhibit 1, Blount Dep. 85:10-22, ECF No. 36-1, pg. 22.). Plaintiff asserts this exchange was "improper, inappropriate, and unprofessional for defense counsel to sarcastically mock and insult the Guardian for not being a 'court reporter' in the traditional sense." Id.

**B.     Defendant's Opposition, ECF No. 44**

Generally, Defendant argues that Plaintiff's motion fails procedurally and substantively. See ECF No. 44. Specifically, Defendant raises five arguments opposing Plaintiff's motion: (1) Plaintiff failed to comply with the meet and confer requirements before filing this motion; (2) Plaintiff failed to comply with requirements to submit a joint statement; (3) Plaintiff

filed this motion and noticed it for hearing on a date after the close of discovery; (4) the deposition provided by Plaintiff was recorded in violation of FRCP 28 and 30; and (5) substantively, Plaintiff is not entitled to sanctions because Defendant's counsel's behavior was appropriate. See id.

### i.   Defendant argues Plaintiff's motion is procedurally deficient

In Defendant's first and second arguments, Defendant contends that Plaintiff failed to comply with the meet and confer requirements as described in this Court's Scheduling Order, ECF No. 33, and under Local Rule 251 because Plaintiff failed to meet with Defendant about Ms. Blount's deposition before filing this motion and failed to submit a joint statement. See id. at 3-4. First, Defendant contends that the instances Plaintiff cites to show his compliance with the meet and confer requirements all happened before Ms. Blount's August 26, 2025, deposition. See id. at 3. Defendant argues that due to this failure to comply with meet and confer requirements, the instant motion should be denied. See id. Defendant further argues that because Plaintiff failed to file a joint statement, in compliance with Local Rule 251, before filing this motion, the motion should be denied. See id. at 3-4.

Defendant contends that because this Court's scheduling order, ECF No. 33, required all disputes regarding non-expert discovery be resolved prior to the close of non-expert discovery, October 31, 2025, and Plaintiff's motion was originally set for hearing after that date, on November 5, 2025, the motion should be denied. See id. at 4.

### ii.   Defendant objects to Plaintiff's Evidence

Defendant next "objects to the audio recording and deposition transcript [footnote omitted] of Ms. Emilee Blount on which Plaintiff relies," noting that Defendant "reluctantly uses the term 'transcript' for the document submitted." ECF No. 44-1, pg. 1. According to Defendant, he raised this objection to Plaintiff's use of Readback to prepare the transcript before the deposition began. Id. at 2 (citing 44-1). Defendant contends that such use violates the Federal Rules of Civil Procedure because: (1) an officer appointed or designated under Rule 28 was not present throughout the deposition; (2) the audio and transcript were not made by a Rule 28 officer or in their presence; (3) the certification of the transcript was signed by "Guardian" Daniel

1 Kramer, not the deposition officer; (4) the certification of the transcript "does not state 'that the
2 deposition accurately records the witness's testimony,' as required by Rule 30(f)(1);" (5) "a
3 Certified Shorthand Reporter was not the 'officer' of this deposition and prepared the deposition
4 transcript;" (6) the $559.00 cost for deposition and transcript is "suspiciously low" compared to
5 what a Certified Shorthand Reporter would charge for a deposition of this length; (7) Artificial
6 Intelligence "prepared or contributed to the preparation of Ms. Blount's deposition transcript;"
7 and (8) Defendant cannot rely on the provided transcript because it was not prepared under the
8 regulation of the court Reporters Board of California. Id. at 2-4.

Defendant acknowledges that a notary was present at the start of the Zoom deposition and administered the oath to the deponent, but Defendant contends that the notary then left the Zoom conference, while "a representative from Readback" remained on the Zoom conference. Id. at 2. Defendant provides this explanation of Readback:

> Readback is court reporting reimagined—a remote reporting service powered by patented AI technology and human editors that delivers transcripts at breakneck speeds. Ideal for complex litigation, high volume firms, and high-stakes cases, Readback is the more efficient and cost-effective way to capture the record." Readback Active Reporting, "What is Readback," http://readback.legal/what-isreadback (last visited December 1, 2025); *see* Hansen Dec. Ex. 4 ("The Guardians who oversee the deposition process are either former stenographic court reports or certified by the American Association of Electronic Reporters and Transcribers (AAERT) as Certified Deposition Reporter (CDRs).").

Id. at 2, fn. 2.

Defendant argues that Plaintiff "tacitly acknowledges Readback does not comply with Rule 28 and 30 because a notary public, apparently compliant under Rule 28, joined this remote deposition at the beginning of the deposition to administer an oath to the witness." Id. at 2. Defendant contends that because the notary left, the deposition was "not conducted 'before' an officer appointed or designated under Rule 30." Id. As to Defendant's claim that Artificial Intelligence was used in the preparation of the transcript, Defendant supports this contention by citing Reacback's website explanation of the program, and a statement by the Guardian Kramer saying "the testimony of the said witness was thereafter transcribed to typewriting, by computer." Id. at 4.

///

6

     iii.  Defendant argues Plaintiff's motion is substantively deficient

  Defendant asserts that "appropriate objections were lodged for the record to specific deposition interrogatories to Ms. Blount, and Ms. Blount responded to all deposition interrogatories requested of her except for one." ECF No. 44, pg. 5. According to Defendant, the only time Ms. Blount was instructed to not respond was after "Plaintiff's request for an apology" which Defendant contends is "not relevant to any claim or defense in this action." Id. (citing Fed. R. Civ. P. 26(b)(1)). Defendant asserts that such question is "harassing she is a fact witness without knowledge of whether an apology is appropriate . . . Plaintiff's request for an apology requests a legal conclusion from this fact witness on behalf of the government to apparently establish liability." Id.

  **C.**  **Plaintiff's Reply, ECF No. 47**

  Plaintiff asserts that Defendant "does not dispute or deny the conduct documented in the deposition transcript supporting Plaintiff's Motion for Sanctions . . . Thus, Defendant tacitly admits to the conduct alleged in Plaintiff's motion." ECF No. 47, pg. 1. Plaintiff contends that his motion is procedurally proper and substantively shows sanctions are appropriate here. See id. generally.

  First, Plaintiff contends his motion followed the procedural requirements to meet and confer because parties met on August 7, 2025, and such meeting "ended with defense counsel shouting at Plaintiff about Defendant's Deferred Resignation Program." Id. at 2. Plaintiff contends that due to that interaction, he informed defendant's counsel that he would prefer to have the Court present to assist with resolving discovery disputes. See id. Subsequently, parties engaged in two informal discovery conferences and Plaintiff contends he raised the issue of Defendant's counsel's behavior during Ms. Blout's deposition at the second conference but, finding the issue was not resolved, Plaintiff decided to file the instant motion. Plaintiff additionally states that when he reached out to the Court about this motion, he asked if further meet and confer efforts were needed and the Court's Clerk stated "'[g]iven that the parties have now engaged in two informal conferences, I do not think a third is necessary at this point.'" Id. (citing Exhibit 4, ECF No. 47-1, pg. 10.).

1  Plaintiff additionally contends that because the Court gave him the motion hearing
2 date, such date was "with this Court's approval" and "that this Court would not instruct Plaintiff
3 to notice his motion for a hearing date that violated this Court's own Amended Scheduling Order,
4 especially because Plaintiff invoked that Amended Scheduling Order in his email to this Court"
5 Id. (citing Exhibits 3 and 4). Plaintiff asserts that any "potential deficiency" is resolved because
6 the discovery schedule was amended and now, fact discovery does not close until December 19,
7 2025. See id. at 3 (citing ECF No. 43).
8  Plaintiff next challenges Defendant's argument about the sufficiency of his
9 deposition transcript, asserting that he "attempted to resolve Defendant's objections
10 to Ms. Blount's deposition, which was conducted by Readback Active Reporting ("Readback"),
11 in good faith." Id. (citing Exhibit 2, ECF No. 47-1, pgs. 5-6, Exhibit 6, ECF No. 47-1, pgs. 14-16,
12 and Exhibit 7, ECF No. 47-1, pg. 18.). According to Plaintiff, Defendant's counsel did not inform
13 Plaintiff of his objections until 2:57 p.m. the day before the deposition. See id. Plaintiff contends
14 that though he responded with a letter addressing Defendant's concerns, "invited Defendant to
15 'identify any specific objections that are not addressed or resolved by the attached letter'. [citation
16 omitted]. However, Defendant did not respond to that email, nor did he identify any specific
17 objection that was not adequately resolved by Plaintiff's letter. Id. (quoting Exhibit 7, ECF No.
18 47-1, pg. 18, and citing Exhibit 2, ECF No. 47-1).
19  Plaintiff provides email correspondence with Readback's Chief Legal Officer,
20 where that individual states that Readback is "supported hundreds of depositions across multiple
21 federal jurisdictions and state courts" and has "never been informed by any attorney that a
22 Readback transcript was rejected or found inadmissible for any purpose." Id. at 20 (quoting
23 Exhibit 8, ECF No. 47-1, pg. 20.). That same individual also informed Plaintiff that they did not
24 use Artificial Intelligence to generate the transcript. See id. Plaintiff asserts that the pricing, which
25 Defendant characterized as "suspiciously low," was fair "based on value" and as informed by
26 Plaintiff's "experience as a federal Contract Specialist." Id. at 4.
27 / / /
28 / / /

1    Next, Plaintiff argues that "the Federal Rules of Civil Procedure do not require a
2 shorthand court reporter." Id. Plaintiff contends that because this is a federal case, "the California
3 Business and Professions Code sections cited by Defendant are irrelevant here." Id. Plaintiff
4 characterizes the objections as "baseless fearmongering" and states: "[o]ne also wonders why
5 Defendant was so adamant and aggressive about issuing his objections and instructions if
6 Defendant possessed such confidence that Ms. Blount's testimony would be deemed
7 inadmissible." Id. Finally, Plaintiff contends that Defendant did not cite any errors with the
8 provided transcript. See id.
9    Plaintiff argues that "Defense counsel does not attempt to deny, dispute, or defend
10 his use of twenty-four (24) impermissible speaking objections in a two (2) hour and thirty-six (36)
11 minute deposition, as documented in Plaintiff's motion." Id. at 5. Plaintiff disputes Defendant's
12 assertion that he only advised Ms. Blount to not respond once, citing the transcript record to show
13 that it occurred five times, in response to two separate questions. See id. Plaintiff concludes by
14 again asserting that if Defendant's counsel believed Plaintiff to be harassing, he should have
15 terminated the deposition under Rule 30(d)(3) and informed the Court. See id.

16
17                                **II. DISCUSSION**
18    The Court declines to rule on this motion based off Defendant's asserted
19 procedural defects but will deny the motion because the Court finds that Defendant's counsel's
20 objections were responsive to the questions posed and did not interfere with Plaintiff's ability to
21 receive answers from the witness during the deposition, as explained further herein.
22    As a preliminary matter, this Court finds it is proper to consider the evidence
23 presented by Plaintiff in support of this motion. Defendant challenges such evidence, arguing the
24 deposition and preparation of the transcript violates Rules 28 and 30. See ECF No. 44, pg. 4.
25 However, Courts regularly consider records of correspondence between parties for motions for
26 sanctions, which are not held to the higher standard of admissible evidence that apply for motions
27 for summary judgment and trial. See Sentis Grp., Inc., Coral Grp., Inc. v. Shell Oil Co., 559 F.3d
28 888, 901 (8th Cir. 2009) (holding "[w]hile the Federal Rules of Evidence do not necessarily apply

in the context of a motion for sanctions, evidence relied upon must, at a minimum, bear indicia of reliability."); See also AtPac, Inc. v. Aptitude Sols., Inc., No. CV 2:10-294 WBS JFM, 2011 U.S. Dist. LEXIS 40043, 2011 WL 13242817, at *1 (E.D. Cal. Apr. 13, 2011); Deerpoint Grp., Inc. v. Agrigenix, Ltd. Liab. Co., No. 1:18-cv-00536-AWI-BAM, 2022 U.S. Dist. LEXIS 197646 (E.D. Cal. Oct. 31, 2022). Finding such transcripts to "bear indicia of reliability," the Court will consider such transcripts.

To the extent that parties anticipate the validity of this, or other, deposition transcripts will be raised in dispositive motions, or trial, parties are directed to file relevant motions to address this issue promptly. As addressed by the Court here and a number of times throughout discovery, the parties' actions have on more than one occasion raised issues as to their willingness to conduct themselves with civility and professionalism. Any actual, or apparent, gamesmanship with regard to last minute filings on this deposition transcript issue will be considered by this Court, along with the merits of such filings.

### A. The Court Declines to Deny the Instant Motion on Alleged Procedural Defects

Defendant argues this motion should be denied for failure to comply with procedural rules prescribed by this Court's own scheduling order, Local Rule 251, and the Federal Rules of Civil Procedure. See ECF No. 44. The Court will not deny this motion on such grounds.

Parties have engaged in multiple informal discovery conferences. Though those conferences did not specifically address Defendant's counsel's conduct during Ms. Blout's deposition, the Court finds prior conferences sufficiently addressed related issues such that the parties were on notice of the Court's expectations, and a further conference would not have alleviated the need for briefing and hearing in the instant matter. Further, Plaintiff clarified with the Court about the applicability of such obligations when he sought a hearing date, and he was informed that the prior informal conferences satisfied this requirement. Thus, the Court declines to deny this motion on such grounds.

///

        Plaintiff filed the instant motion on October 2, 2025, but noticed this motion hearing after the close of discovery, based on the date provided by this Court. See ECF No. 47-1, pg. 10. Plaintiff contends that the Court gave him the date, such date was given "with this Court's approval." ECF No. 47, pg. 2. It is not this Court's obligation to investigate whether such date complied with Plaintiff's deadlines. Plaintiff did not inform the Court of any concern that the provided date was after the close of non-expert discovery, nor did Plaintiff request an extension of non-expert discovery in light of the date provided. Given that Plaintiff's motion requests another deposition of Ms. Blount, requesting such an extension would be necessary. However, considering Plaintiff's diligence in filing the instant motion weeks before the close of non-expert discovery, that the Court's own schedule impacted the hearing date, and that non-expert discovery was extended until December 19, 2025, ECF Nos. 41 and 43, the Court declines to deny the motion for sanctions based on this alleged procedural defect.

        **B.**      **The Court Finds Sanctions are Not Appropriate**

        Federal Rule of Civil Procedure 37(d) authorizes the court "to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules." Wyle v. R.J. Reynolds Indus., Inc., 709 F.2d 585, 589 (9th Cir. 1983). Under Rule 30(d)(2), the court may impose sanctions for impeding, delaying, or frustrating the fair examination of the deponent.

        The Court finds that sanctions are not appropriate because Defendant's objections during Ms. Blount's deposition, though adversarial and, at times, aggressive, properly preserved Defendant's objections in response to the questions posed and did not impede, delay, or frustrate Plaintiff's ability to conduct the deposition. Objections inherently disrupt the flow of a deposition, but counsel has an obligation to preserve objections for the record. The Court notes that conducting a deposition over Zoom, while convenient, often results in parties talking over one another, especially in the case of objections, and therefore, objections can be even more disruptive in such setting.

/ / /

/ / /

Plaintiff asserts that Defendant's counsel made "[f]rivolous argumentative objections, suggestive objections, and speaking objections." ECF No. 36, pg. 3. As to the objections being frivolous and argumentative, this Court finds that, based on the excerpts Plaintiff provided, the objections were not frivolous and responded directly to the content of the questions posed.

Plaintiff contends that Defendant's counsel "[i]nstructing the witness to answer 'if you can', 'if you know', or 'if you understand the question' are examples of speaking objections." ECF No. 36, pg. 3 (citing Freedom's Path at Dayton v. Dayton Metro. Hous. Auth., Case No. 3:16-cv-466, VLEX-893199315, at *16 (S.D. Ohio Jun 13, 2018); In re EpiPen, Case No. 17-md-2785-DDC-TJJ, MDL No: 2785, VLEX- 888788659, at *2 (D. Kan. Dec 14, 2018) (internal citations omitted)). Plaintiff additionally cites a District of Kansas case finding that "[i]nstructions to a witness that they may answer a question 'if they know' or 'if they understand the question' are raw, unmitigated coaching, and are never appropriate." Cincinnati Ins. Co. v. Serrano, No. 11-2075-JAR, 2012 U.S. Dist. LEXIS 1363, at *12 (D. Kan. Jan. 5, 2012) (emphasis in original).

The Court notes that first, all the cited authority is from District Courts, which are not binding on this Court, and even more, none of those District Courts are within the Ninth Circuit. Such precedent is, at most, persuasive authority. To the extent that such authority is persuasive, this Court finds the situation here distinguishable from the cited cases. First, the objections in the cited cases were not responsive, nor reflective of the question asked and second, the counsel's objections impacted the witness' answer and prevented the party conducting the deposition from receiving an answer.  Examples of the questions posed in those cases that resulted in the opposing attorney advising the witness to "answer if you know," "if you understand the question," or "you can answer it, if you can" include: "Does the Americans with Disabilities Act apply to your policies and actions? . . . Is that because the HUD regulations controlled your administrative plan?," Freedom's Path at Dayton, 2018 U.S. Dist. LEXIS 98851, at *19-22; "Did the Hinkle Law Firm tell you that Derek was judgment proof ?," Cincinnati Ins. Co. U.S. Dist. LEXIS 1363, at *6-7; and "Didn't y'all file this?," In re EpiPen, No. MDL No:

12

2785, 2018 U.S. Dist. LEXIS 210972, at *23-24. Following the attorney's objection, the witnesses in those cases responded, "I don't know," "I don't understand," or otherwise reiterated the attorney's objections as a response to the question. See id.

Here, Plaintiff provides a number of excerpts from the deposition, which he argues were "the most egregious" violations. ECF No. 36, pg. 2. The Court will address two, which the Court finds to be illustrative of the examples provided:

> Example 1
> Q. So here we have the White House. It specifically says, "The White House identified compliance with the weekly or twice-weekly screening testing requirement as a condition for unvaccinated employees here." That comes from the White House, and you previously testified that the Safer Federal Workforce Task Force was a White House-level organization.
>
> MR. LOWE: So, Guardian, go ahead and scroll that down, please, to 2424.
>
> Q. Okay. And here we have "Biden aides," plural, indicating more than one aide stating that, "The goal of the requirement is to render being unvaccinated so burdensome," again, so burdensome, "that those who haven't received the shots will have little choice other than to get them." So to clarify, did Defendant's COVID-19 screening testing program meet that goal, which was stated by multiple White House aides?
>
> MR. HANSEN: Objection. It's argumentative. It lacks foundation. It's compound. Ms. Blount, if you understand that question, go ahead.
>
> MS. BLOUNT. I don't see the burdensomeness in the testing program, so I guess I'm not seeing the connection in that.
>
> ECF No. 36-1, pg. 20.
>
> Example 2
>
> Q: Okay. So based on your answers here, it appears that the Safer Federal Workforce Task Force determined that employees whose religious beliefs preclude vaccination were incapable of making their own healthcare decisions and that Defendant must therefore impose an otherwise unwanted screening testing procedure on those employees for their own good; is that correct?
>
> MR. HANSEN: Objection. It lacks foundation. It's compound, perhaps containing five or six questions. It calls for speculation for this witness. It calls for an expert opinion as well. But, I mean, if you understand that question, go ahead, Ms. Blount.
>
> MS. BLOUNT: Yeah. I don't know anything to add to that. I don't quite understand the question though.
>
> Q. All right. Well, let me rephrase it. I'm happy to do that. So based on everything we've discussed here up to this point and from your answers to these questions and from your answers to me in the Teams chat, it appears that the Safer Federal

1 | Workforce Task Force determined that employees whose religious beliefs preclude vaccination were incapable of making their own healthcare decisions, and that then Defendant must step in and impose an otherwise unwanted screening testing procedure on those employees for their own good. Does that make sense?

MR. HANSEN: Objection. It's incomprehensible. It calls for speculation. It lacks foundation. It's compound, perhaps containing five or six questions. It calls for an expert opinion. Go ahead, if you can, Ms. Blount.

[MS. BLOUNT]. Yeah. All I can say to what I'm hearing is that as a federal employee, if you're not fully vaccinated, you were enrolled in a screening testing program, and those conditions upon which you would be required to be tested were outlined. And if those conditions came, then you had that conversation with your supervisor during that time, whether you tested or not. You're a federal employee. You're working on behalf of the federal government. You're coming into a federal workforce. You're either meeting with the public on behalf of the federal government. You're following the federal guidelines and the federal regulations and the federal policies. To me, it's quite straightforward.

Q. Okay. Well, to me, the question was quite straightforward. So, again, I'm just summarizing the background. I'm not asking four or five questions. I'm giving a summary of what we've discussed up to this point, and then I'm asking you a question. So I'll break it down into several smaller questions if that makes it easier. So based on everything we've discussed and the testimony you've given here, it appears the Safer Federal Workforce Task Force determined that employees whose religious beliefs preclude vaccination were not capable of making their own healthcare decisions. Would you agree with that?

[MS. BLOUNT]. No.

MR. HANSEN: Objection. It lacks foundation. It calls for speculation. It's compound. Calls for an expert opinion. It's asked and answered. Ms. Blount, if you understand that question, please go ahead again.

[MS. BLOUNT] Well, I would say no. That's not what I heard from the Safer Federal Workforce ever, the phrase that individuals were incapable of making their own medical decisions or their own decisions. That terminology, that phrase, that sentence was never something that I have heard from anyone, Safer Federal Workforce, the USDA, any leadership; that is not at all the intent. The intent is not whether they have the ability to make these decisions. The intent is to provide the safest workplace possible for not only the vaccinated employees but the unvaccinated employees.

Id. at 16-19

This Court finds that in both examples that the objections responded to the fact that questions posed were often compound. The objections appropriately addressed the phraseology of the question. By contrast, in the case law cited by Plaintiff, the attorney inappropriately objected to very clear, concise questions, claiming such questions were incomprehensible. Additionally, Plaintiff's transcript shows that Ms. Blout did indeed answer the

14

questions, despite the objections, whereas in the cited cases, the deponent adopted exactly what counsel had said. Thus, the evidence provided here does not show "raw unmitigated coaching," because the objections reflected the question posed. Further, the objections did not impede, delay, or frustrate Plaintiff's ability to receive a response from Ms. Blount. To the extent that there was a delay, the transcript excerpts here suggest that any delay was due to the phraseology of the question, and therefore, the witness needed the question to be rephrased. This Court finds this to be true of all the examples provided by Plaintiff – the objections made were reflective of the question posed and did not impact Plaintiff's ability to receive an answer from Ms. Blount. The transcript provided also confirms that Plaintiff asked all the questions he planned to ask. See ECF No. 36-1, pg. 31 ("Q. Okay. We're done. That's my last question."). Indeed, at oral arguments for this motion, the undersigned asked Plaintiff if there were any questions he did not get an answer to, and Plaintiff did not provide any examples of unanswered questions.

        Plaintiff asserts that Defendant's counsel "issued twenty-four (24) speaking objections in two (2) hours and thirty-six (36) minutes, averaging a speaking objection roughly every six-and-a-half (6.5) minutes according to Plaintiff's calculations. (citation omitted [s]pecifically, defense counsel instructed the witness to answer "if you can" eighteen times, and to answer "if you understand the question" six times. (citation omitted)." ECF No. 36, pg. 4. However, what those numbers obscure is the fact that a number of the 24 objections were in response to Plaintiff asking the same question, though phrased slightly differently. Further, this Court finds that the number of objections itself could not warrant sanctions, what is relevant is whether the objections were frivolous, or as the Court finds here, responsive to the form and substance of the question posed. Defendant's counsel has an obligation to preserve objections for the record and did so here. Thus, the undersigned declines to impose sanctions based on Plaintiff's assertion that Defendant's counsel made frivolous, suggestive objections that impeded Plaintiff's ability to conduct the deposition.

        The Court notes that Plaintiff and Defendant's counsel have an additional case in the Eastern District assigned to the undersigned, Case No. 2:24-cv-01689-DMC. There, Defendant's counsel raised similar objections in response to Plaintiff's discovery requests such

1  as: compound, overbroad, and/or lacks foundation. See ECF No. 24, pgs. 9-13 (Case No. 2:24-cv-
2  01689-DMC). Plaintiff challenged such objections in a motion to compel. See ECF No. 19 (Case
3  No. 2:24-cv-01689-DMC). Plaintiff was informed during the motion to compel hearing that
4  compound and overbroad discovery requests are not permissible and often impede a party's
5  ability to get sufficient discovery responses. There, Plaintiff was permitted to edit a number of
6  requests, and the Court allowed Plaintiff to submit additional requests beyond what is generally
7  permitted. See ECF No. 24 (Case No. 2:24-cv-01689-DMC). It appears from the transcripts that
8  Plaintiff's deposition questions suffered similar defects.
9     Plaintiff next argues that Defendant's counsel improperly instructed Ms. Blount to
10 not respond "five times when no matter of privilege existed." ECF No. 36, pg. 8 (citing Exhibit 1,
11 Blount Dep. 108:13, 109:15-16, 110:5-6, 110:9-10, 111:4). However, this number again, obscures
12 the fact that such instruction was given in response to the same or very similar question: "would
13 you like to take this opportunity to apologize to me here today? [two instructions not to answer
14 followed] . . . would you like to answer that question? [two instructions not to answer followed] .
15 . . would you like to take this opportunity to apologize on the record to the other employees
16 whose lives and careers were disrupted by the policies you implemented during your tenure as
17 national pandemic coordinator? [one instruction not to answer followed]" ECF No. 36-1 at 27-30.
18    Plaintiff argues that such instruction violated Rule 30 (c)(2), which states: "[a]
19 person may instruct a deponent not to answer only when necessary to preserve a privilege, to
20 enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." A party
21 may move to limit or terminate a deposition if it believes the deposition "is being conducted in
22 bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or
23 party." Fed. R. Civ. Pro. 30 (d)(3)(A). In the first instruction not to respond, Defendant's counsel
24 stated "Objection. It's harassing for the witness. Ms. Blount don't answer that question," and
25 reiterated throughout the exchange that Defendant's counsel believed the question was harassing.
26 ECF No. 36-1, pg. 27. Depositions are intended to give a party the opportunity to conduct fact-
27 finding with relevant individuals. Inquiring whether a deponent would like to apologize, or asking
28 for an apology, does not amount to fact finding. Thus, in the right context, a party could make a

16

1  motion pursuant to Rule30 (d)(3)(A), seeking to limit or terminate the deposition in response to
2  such an inquiry.
3         Defendant's counsel did not move to terminate the deposition after the question,
4  perhaps because Plaintiff only had one question remaining after this exchange. Regardless, the
5  Court finds it was appropriate for Defendant's counsel to instruct the witness to not answer, given
6  the question posed, to preserve the record if Defendant's counsel found necessary a motion to
7  terminate or limit the deposition. Thus, the undersigned will deny Plaintiff's motion for sanctions
8  as to Plaintiff's allegation that Defendant's counsel improperly instructed Ms. Blount to not
9  respond.
10        Plaintiff additionally contends that "defense counsel turned his ire to the Guardian
11 from Readback Active Reporting," citing the following exchange:

> THE GUARDIAN: I actually just want to make sure: Was that a "no" to the previous answer, Ms. Blount?
>
> MR. HANSEN: No.
>
> MR. LOWE: Okay.
>
> MR. HANSEN: Is there a court -- do we have a -- oh, we don't have a court reporter. Never mind.

17        ECF No. 36, pg. 12 (quoting Exhibit 1, ECF No. 36-1, pg. 22.).
18        The Court could imagine this exchange with sarcastic or condescending
19 undertones, however, that would require making assumptions about tone that is not appropriate,
20 as the Court could equally imagine this exchange without such negative undertones. The Court
21 finds it is not necessary for the Court to make such assumptions. The undersigned finds that this
22 single comment, even if given in a sarcastic or condescending tone, does not meet the threshold
23 showing necessary to warrant sanctions.
24        While the Court declines to order sanctions as against Defense counsel based on the issues
25 raised in this motion, it is not lost on this Court that the nature and manner of Defense counsel's
26 interactions in the context of these discovery proceedings has led to such emotional and
27 frustrating exchanges that Plaintiff felt compelled to bring this motion. As repeatedly emphasized
28 to both counsel, this Court expects better. This rejection of Plaintiff's request for sanctions should

in no way be read by Defense counsel as an endorsement or even acceptance of unduly antagonistic behavior, or interactions characterized by sarcasm, demeaning commentary, or attitudes otherwise lacking in civility, professionalism or reasonable accommodation. The objective of safeguarding against such behavior by either counsel gave rise to this Court's order compelling the parties to conduct a future deposition under supervision at the courthouse, where such issues could be addressed immediately. Such measures should not be necessary for experienced legal professionals and officers of the court. Should this Court determine that such unprofessional conduct continues to plague the discovery proceedings in this matter, sanctions will be levied as against all offending parties, and as necessary will include, but not be limited to both monetary and evidentiary sanctions. The time for markedly improved conduct is now.

For the reasons explained herein, the undersigned finds sanctions are not warranted and therefore, Plaintiff's motion for sanctions, ECF No. 36, is DENIED.

IT IS SO ORDERED.

Dated: December 17, 2025

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE