**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CASEY LOWE, | No.  2:24-CV-1287-DMC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| BROOKE ROLLINS[1], | |
| Defendant. | |

Plaintiff brings this civil action.  Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment.  See 28 U.S.C. § 636(c).  Pending before the Court is Defendant's motion for summary judgment.  See ECF No. 56.  Plaintiff has filed an opposition.  See ECF No. 59. Defendant has filed a reply.  See ECF No. 61.  The parties appeared before the undersigned on March 3, 2026, at 1:00 p.m. for a hearing via Zoom.  Plaintiff Casey Lowe, Esq., appeared on his own behalf.  Brendon Hansen, Esq., appeared for Defendant.  Upon consideration of the parties' arguments, the matter was submitted for a written decision.

/ / /

/ / /

---

[1]    Brooke Rollins is substituted as successor to Thomas Vilsack.  See Fed. R. Civ. P. 25(d).  The Clerk of the Court will be directed to update the docket accordingly.

1

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

## I. PLAINTIFF'S ALLEGATIONS

This action proceeds on Plaintiff's first amended complaint. See ECF No. 5. Plaintiff first recounts several statements made by former President Biden and his administration "regarding the [COVID-19] vaccination mandate for federal employees." Id. at 2. According to Plaintiff, on July 29, 2021, President Biden said of people who are unvaccinated, "[y]ou present a problem to yourself, to your family and to those with whom you work." Id. Plaintiff adds that, on this same date, the Cable News Network (CNN) published an article citing a Biden administration official and stating: "The goal of the requirement, Biden aides have said, is to render being unvaccinated **so burdensome** that those who haven't received shots will have little choice other than to get them." Id. (emphasis added by Plaintiff). Plaintiff alleges that, between September 2021 and January 2022, President Biden made the following additional comments: "[t]his is a pandemic of the unvaccinated," "[t]his continues to be a pandemic of the

unvaccinated," "there's no excuse for anyone being unvaccinated," and that unvaccinated people would experience a winter of "severe illness and death." Id.

Next, Plaintiff sets forth allegations relating to his employment with the United States Department of Agriculture (USDA). See id. at 2-7. According to Plaintiff, the following series of events occurred:

| | |
|---|---|
| November 3, 2021 | Plaintiff received a formal job offer from USDA, which Plaintiff accepted the same day. See id. at 2. |
| November 16, 2021 | Plaintiff reached out to his onboarding supervisor, Human Resources Specialist Mariah Rimmer, to seek reasonable accommodation relating to the vaccination mandate for federal workers announced in Executive Order 14043 due to Plaintiff's religious beliefs. See id. at 3. |
| November 18, 2021 | Plaintiff filed an informal complaint against Ms. Rimmer. See id., n.2. |
| February 14, 2022 | Plaintiff began his employment with USDA as a contract specialist following a decision by the United States District Court for the Southern District of Texas imposing a nationwide injunction barring enforcement of Executive Order 14043. See id. at 3. |
| March 21, 2022 | Plaintiff received his first paycheck after a supervisor intervened on his behalf. See id. Plaintiff adds that he did not receive his government issued computer until six weeks after he began employment on February 14, 2022 (March 28, 2022). See id. |
| March 27, 2022 | Plaintiff filed a formal complaint against Ms. Rimmer. See id. |
| April 4, 2022 | Plaintiff learned that his Federal Employee Health Benefits had not been transferred to USDA upon commencement of Plaintiff's employment, resulting in a lapse in health insurance coverage. See id. Plaintiff states that this issue was resolved after he opened a case with the human resources department and that his health insurance coverage was restored by the end of April 2022. See id. |
| April 26, 2022 | Plaintiff emailed his supervisor to formally request reasonable accommodation relating to USDA's mandatory COVID-19 Screening Testing Program for unvaccinated employees. See id. In this request, Plaintiff made clear that he did not consent to participate in the program and that "the constant |

4

| | stress and anxiety of having my livelihood hung over my head, and of being made a scapegoat and pariah because of my very sincerely held religious beliefs continues to take a huge toll on me." Id. at 3-4. |
|---|---|
| May 11, 2022 | Plaintiff received an email from USDA informing him that he had been enrolled in the COVID-19 Screening Testing Program. See id. at 4. Plaintiff claims this violated government guidelines which provided that workplace-based COVID-19 testing should not occur absent the employee's informed consent. See id. |
| July 2, 2022 | Plaintiff's health insurance was cancelled at USDA's behest due to a termination of employment. See id. at 4. |
| November 4, 2022 | Plaintiff first learned that this health insurance had been cancelled when a claim was denied. See id. Plaintiff filed another case with the human resources department to notify his employer of the situation. See id. |
| November 17, 2022 | Plaintiff's health insurance coverage was restored. See id. Plaintiff alleges that, between July 2, 2022, and November 17, 2022, premiums for FEHB coverage were regularly deducted from his paycheck. See id. |

The first amended complaint asserts additional factual allegations specific to Ms. Rimmer. See id. at 5. According to Plaintiff, Ms. Rimmer provided a sworn statement in which she identified herself as the human resources specialist assigned to Plaintiff's onboarding with USDA. See id. Plaintiff adds that Ms. Rimmer was identified as the "Responding Official" with respect to two complaints Plaintiff filed against USDA. Id. Plaintiff claims Ms. Rimmer testified in her sworn statement that she first became aware in "late 2021 to early 2022" that Plaintiff had filed a complaint against USDA. Id. Plaintiff further alleges that "HR Specialist Rimmer also made false, unsupported, and derogatory remarks about Mr. Lowe in her sworn statement." Id. Plaintiff states that Ms. Rimmer transferred out of USDA in December 2022. See id.

Plaintiff alleges that, between May 25, 2022, and June 16, 2023, Plaintiff made numerous requests to USDA to obtain the computer software necessary to perform his job duties. See id. Plaintiff states he was never provided with the requested software. See id. Plaintiff also states that, in June 2023, he ". . .engaged his Supervisor and Zone Chief to discuss the impact

5

Defendants' policies had on him." Id. According to Plaintiff, he "also requested that USDA issue an official statement acknowledging the fact that both vaccinated and unvaccinated individuals are capable of transmitting COVID-19 in the hope that such a statement may relieve the negative stigma placed around unvaccinated employees during the pandemic." Id. at 6. Plaintiff states USDA "declined to do so." Id.

Next, Plaintiff asserts the following with respect to his time working at USDA:

48. During his tenure with USDA, Mr. Lowe was subjected to remarks by his co-workers including, but not limited to, that remaining unvaccinated is "worse than having a bunch of DUIs," that unvaccinated individuals "don't give a [expletive] about themselves or anyone else," and that unvaccinated individuals are "stupid, and you can't fix stupid."

49. Thus, Mr. Lowe lived with constant stress and anxiety that his unvaccinated status would be revealed to his co-workers, making him a pariah in the workplace.

50. Therefore, Mr. Lowe's time working for USDA was characterized by constant stress and anxiety caused by Defendants' policies, statements, and actions.

Id.

Plaintiff states that, on July 4, 2023, he "emailed his Supervisor and Zone Chief to inform them that that Mr. Lowe could no longer physically perform his job duties 'as a direct result of the Agency's discriminatory and retaliatory conduct' towards him because Mr. Lowe's sincerely held religious beliefs preclude vaccination, and because Mr. Lowe engaged in protected EEO activity." Id. Plaintiff claims USDA withheld his final paycheck until November 27, 2023. See id.

The first amended complaint asserts four claims under Title VII of the Civil Rights Act, as follows:

First Claim          Retaliation. See id. at 7.

Second Claim          Disparate Treatment. See id. at 8.

Third Claim          Hostile Work Environment. See id. at 9-10.

Fourth Claim          Constructive Discharge. See id. at 10.

///

///

///

6

## II.  THE PARTIES' EVIDENCE

### A.    Defendant's Motion

Defendant's motion for summary judgment is supported by the following: (1) a memorandum of points and authorities, see ECF No. 56-1; (2) a separate statement of undisputed facts, see ECF No. 56-2; (3) a request for judicial notice, see ECF No. 56-3; (4) the declaration of Emilee Blount (Blount Decl.) with attached Exhibits 1 through 4, see ECF No. 56-4; and (5) the declaration of defense counsel Brendon Hansen, Esq., (Hansen Decl.) with attached Exhibits 1 through 14, see ECF No. 56-5.  Defendant also relies on portions of the operative first amended complaint, as well as Plaintiff's deposition testimony of January 14, 2026.  Where Defendant cites excepts from Plaintiff's deposition, Defendant has complied with Eastern District of California local rules and has lodged complete certified copy of the transcript.

Defendant asserts the following facts are undisputed based on the evidence cited:

Executive Order 14043
and the Screening Testing Program

1.      Executive Order 14043 issued on September 9, 2021, generally requiring certain federal employees to be vaccinated for COVID-19.  See Blount Dec., ¶ 2 & Ex. 1.

2.      Executive Order 14043 exempted employees who asserted that sincerely held religious beliefs precluded their vaccination; they were instead enrolled in a COVID-19 Screening Testing Program.  See Blount Dec., ¶¶ 2-5, Exs. 1-4.

3.      The Screening Testing Program permitted employees with sincerely held religious beliefs to request a religious or reasonable accommodation, and they were exempt from COVID-19 vaccination or screening while their accommodation request was pending. But more importantly for this case, screening was only required when employees entered federal facilities or interfaced with the public as part of their job duties.  See Blount Dec., ¶¶ 2-5, Exs. 1-4; Hansen Dec., Ex. 4 (COVID-19 Screening Testing Guidance for USDA Employees April 28, 2022), p. 2, ¶ 3.

4.      As confirmed by the USDA on April 28, 2022, "[r]emote employees who never report[ed] to a facility or worksite [were] not required to take routine screening tests"—they only did so when "traveling or reporting to a facility or worksite on an ad hoc or nonroutine basis where Community Levels are MEDIUM or HIGH."  Id.

5.      Plaintiff was never subject to vaccination or screening under Executive Order 14043 because he was a fully remote employee.  See id.

7

6.      On November 6, 2021, Plaintiff filed an informal request for accommodation that his sincerely held religious beliefs precluded vaccination, followed by a formal request two days later. See Blount Dec., ¶¶ 2-5, Exs. 1-4; see also ECF No. 5 (first amended complaint), p. 3, ¶¶ 11, 16.

7.      Plaintiff filed a formal complaint with the Equal Employment Opportunity Commission (EEOC) on March 27, 2022. See ECF No. 5, p. 3, ¶ 16; see also ECF No. 5, p. 3, ¶ 19.

8.      On April 26, 2022, Plaintiff formally requested a reasonable accommodation to the Screening Testing Program by email to his supervisor. See ECF No. 5, p. 3, ¶ 19.

9.      Plaintiff's request for a reasonable accommodation exempted him from testing. See Blount Dec., ¶¶ 2-5, Exs. 1-4.

10.     Plaintiff never received a COVID-19 vaccine, due to Executive Order 14043 or otherwise. See Hansen Dec., Ex. 1 (Lowe Dep.), p. 51:3-6.

11.     Plaintiff was not screened for COVID-19 under the Screening Testing Program. See Hansen Dec., Ex. 1 (Lowe Dep.), p. 53:19-54:2.

12.     The USDA's Screening Testing Program ended on August 22, 2022. See Blount Dec., ¶¶ 7 & Ex. 4.

13.     On May 9, 2023, Executive Order 14043 was revoked. See Hansen Dec., Ex. 5 (Executive Order 14099).

<u>Employment with USDA – General</u>

1.      Plaintiff took a job with the United States Forest Service (USFS), part of the USDA, as a contract specialist in February 2022. See Hansen Dec., Ex. 1 (Lowe Dep.), p. 93:15-23.

2.      Plaintiff was previously employed by the United States Navy and then by the Bureau of Land Management (BLM), part of the Department of the Interior. See Hansen Dec., Ex. 1 (Lowe Dep.), pp. 33:11-14, 91:13-25; Hansen Dec., Ex. 2 (Lowe Dep. Ex. 7), p. 3.

4.      Plaintiff worked at the USFS until July 5, 2023. See Hansen Dec., Ex. 1 (Lowe Dep.,) p. 93:15-23; Hansen Dec., Ex. 3, p. 2.

5.      Plaintiff never received a negative performance review. See Hansen Dec., Ex. 1 (Lowe Dep.), p. 57:2-6.

/ / /

/ / /

/ / /

8

<u>First Paycheck</u>

1.    Plaintiff received his first paycheck on March 21, 2022. <u>See</u> ECF No. 5, p. 3, ¶ 13.

2.    Plaintiff transferred from BLM to USFS in pay period 4, but the transfer of Plaintiff's employment was not processed by the National Finance Center until Pay Period 5 because of several data field entry errors that took time to correct. <u>See</u> Hansen Dec., Ex. 9, #11.

3.    The issues with Plaintiff's first paycheck were corrected, and Plaintiff received his pay for both Pay Period 4 and Pay Period 5 on March 21, 2022. <u>See id.</u>; <u>see also</u> Hansen Dec, Ex. 1 (Lowe Dep.), p. 41:25-42:10.

<u>Work Computer</u>

1.    Plaintiff's initial supervisor Matthew Gagnon submitted a request for Plaintiff's work computer on February 16, 2022, but the system would not accept the request. <u>See</u> Hansen Dec., Ex. 9, #12.

2.    Mr. Gagnon followed up with emails and a helpdesk ticket to resolve the issue; the computer was shipped on March 31, 2022. <u>See id.</u>

<u>FEHB Benefits</u>

1.    Plaintiff's health insurance carrier received a system-generated correction that removed Plaintiff from post-tac deduction, but the carrier did not receive Plaintiff's pre-tax deduction election. <u>See</u> Hansen Dec., Ex. 6, p. 3; Ex. 9, #5-7.

2.    The carrier interpreted the discrepancy as a cancellation. <u>See id.</u>

3.    There was never a lapse of health insurance coverage. <u>See id.</u>; <u>see also</u> Hansen Dec., Ex. 1 (Lowe Dep.), p. 48:23-50:17.

4.    Plaintiff's FEHB benefits were never terminated. <u>See</u> Hansen Dec., Ex. 1 (Lowe Dep.), p. 48:23-50:17; Ex. 9, #5-7.

<u>Request for Software</u>

1.    Plaintiff's request for work-related software (Adobe Acrobat) was approved on November 4, 2022. <u>See</u> Hansen Dec., Ex. 9, #8; Ex. 11, #24-25.

2.    Plaintiff had access to Adobe Acrobat by February 17 2023, at the latest. <u>See id.</u>

///

///

///

9

Remarks by Co-Workers

1.      At his deposition, Plaintiff claimed that a co-worker, Sarah Hill, said "[t]he ones you really got to watch out for are the ones that say it's against their religion.  They're really crazy."  See Hansen Dec., Ex. 1 (Lowe Dep.), p. 67:22-69:3.

2.      Plaintiff conceded that Ms. Hill's comment was the only time that anyone made comments about religious beliefs precluding vaccination.  See Hansen Dec., Ex. 1 (Lowe Dep.), p. 70:2-71:14.

3.      Plaintiff concedes that no co-worker ever said that Plaintiff himself was unvaccinated and he was never "outed" as being unvaccinated.  See Hansen Dec., Ex. 1 (Lowe Dep.), p. 69:2-16.

4.      Plaintiff believed the comment was directed at him because he was in a Zoom meeting when the comment was made and he was unvaccinated.  See Hansen Dec., Ex. 1 (Lowe Dep.), p. 68:7-16.

Last Paycheck

1.      Following Plaintiff's July 3, 2023, email stating that he believed he was constructively discharged from his employment, Plaintiff's supervisor, Greg Wilde, initially submitted Plaintiff's separation paperwork on July 15, 2023.  See Hansen Dec., Ex. 9, #4; Ex. 12, #28.

2.      Due to a coding error, the Personnel Action Records Branch did not receive Plaintiff's separation documentation until September 15, 2023, after which it had to engage with the Staffing Brach to obtain additional information and confirm the effective date of separation.  See id.

3.      Plaintiff's final paycheck was issued on November 27, 2023.  See ECF No. 5, ¶ 53.

Defendant's supporting documentary evidence consists of Exhibits 1 through 4 attached to the Blount declaration, Exhibits 1 through 14 attached to the Hansen declaration, as well as Defendant's request for judicial notice.  In the request for judicial notice, Defendant asks the Court to judicially notice the following: (1) Executive Order 14043, Exhibit 1 to the Blount declaration; (2) Executive Order 14099, Exhibit 5 to the Hansen declaration; (3) United States Office of Personnel Management letter dated October 1, 2021, Exhibit 2 to the Blount declaration; and (4) COVID-19 Screening Testing Guidance for USDA Employees dated April 28, 2022, Exhibit 4 to the Hansen declaration.  See ECF No. 56-3.  Plaintiff does not oppose Defendant's request for judicial notice, which will be granted.  See Fed. R. Evid. 201.

///

10

Defendant provides the Court with the declaration of Emilee Blount, who was the National Pandemic Coordinator for the USFS starting in September 2020.  See ECF No. 56-4. The exhibits attached to the Blount declaration consist of the following:

Exhibit 1    Executive Order 14043 dated September 9, 2021.  See ECF No. 56-4, pgs. 5-6.

Exhibit 2    United States Office of Personnel Management memorandum dated October 1, 2021, to heads of executive departments and agencies.  See ECF No. 56-4, pgs. 8-36.

Exhibit 3    Email from Plaintiff to Emilee Blount dated May 24, 2022; email from Ms. Blount to Plaintiff dated May 25, 2022; email from Plaintiff to Ms. Blount dated May 25, 2022; email from Ms. Blount to Plaintiff dated May 26, 2022; email from Plaintiff to Ms. Blount dated May 26, 2022; and undated email from Ms. Blount to Plaintiff.  See ECF No. 65-4, pgs. 38-42.

Exhibit 4    Email from Margaret Goods, the USFS Reasonable Accommodation Specialist, to Plaintiff dated August 23, 2023.  See ECF No. 56-4, pg. 44.

Defendant also provided the declaration of defense counsel Brendon Hansen.  See ECF No. 56-5.  The exhibits attached to the Hansen declaration consist of the following:

Exhibit 1    Highlighted excerpts from the transcript of Plaintiff's deposition taken on January 14, 2026.  See ECF No. 56-5, pgs. 4-85.  Defendant has lodged the complete certified copy of the deposition transcript with the Court.

Exhibit 2    A copy of Exhibit 7 attached to the transcript of Plaintiff's January 14, 2026, deposition.  See ECF No. 56-5, pgs. 87-96.  This document is a printout of Plaintiff's profile on Linkedin as of August 14, 2025.

Exhibit 3    Plaintiff's declaration dated June 18, 2022.  See ECF No. 56-5, pgs. 98-118.

Exhibit 4    COVID-19 Screening Testing Guidance for USDA Employees dated April 28, 2022.  See ECF No. 56-5, pgs. 120-131.

Exhibit 5    Executive Order 14099 dated May 9, 2022.  See ECF No. 56-5, pgs. 133-34.

Exhibit 6    Email from Plaintiff to Justin Hicks dated June 21, 2023. See ECF No. 56-5, pgs. 136-38.

///

Exhibit 7      Plaintiff initial disclosures in this action pursuant to Fed. R. Civ. P. 26(a)(1). See ECF No. 56-5, pgs. 140-46.

Exhibit 8      Plaintiff's responses to Defendant's revised interrogatories, set one. See ECF No. 56-5, pgs. 148-59. The responses are signed by Plaintiff. See id. at 159.

Exhibit 9      Defendant's responses to Plaintiff's interrogatories, set one. See ECF No. 56-5, pgs. 161-74. The responses attached at Exhibit 9 are provided by Dwayne Brown, the Acting Deputy Director for Human Resource Management at USFS, but are not signed by Mr. Brown. See id. at 174.

Exhibit 10     Defendant's responses to Plaintiff's interrogatories, set two. See ECF No. 56-5, pgs. 176-80. The responses attached at Exhibit 10 are provided by Mr. Brown but are not signed by Mr. Brown. See id. at 180.

Exhibit 11     Defendant's responses to Plaintiff's interrogatories, set three. See ECF No. 56-5, pgs. 182-86. The responses attached at Exhibit 11 are provided by Mr. Brown but are not signed by Mr. Brown. See id. at 186.

Exhibit 12     Defendant's responses to Plaintiff's interrogatories, set four. See ECF No. 56-5, pgs. 188-92. The responses attached at Exhibit 12 are provided by Mr. Brown but are not signed by Mr. Brown. See id. at 192.

Exhibit 13     Defendant's supplemental responses to Plaintiff's interrogatories, set one. See ECF No. 56-5, pgs. 192-98. The responses attached at Exhibit 14 are provided by Mr. Brown but are not signed by Mr. Brown. See id. at 198.

Exhibit 14     Defendant's supplemental responses to Plaintiff's interrogatories, set two. See ECF No. 56-5, pgs. 200-203. The responses attached at Exhibit 14 are provided by Mr. Brown but are not signed by Mr. Brown. See id. at 203.

### B.     Plaintiff's Opposition

Plaintiff's opposition to Defendant's motion for summary judgment is supported by the following: (1) a memorandum of points and authorities, see ECF No. 59; (2) a response to Defendant's separate statement of undisputed facts, see ECF No. 59-1; (3) a separate statement of disputed facts, see ECF No. 59-2; (4) Plaintiff's declaration, see ECF No. 59-3; and (5) Exhibits 1 through 44 attached to Plaintiff's declaration, see ECF Nos 59-4 to 59-6.

/ / /

/ / /

/ / /

12

Plaintiff's opposition relies on exhibits attached to Plaintiff's declaration, which consist of the following:

| | |
|---|---|
| Exhibit 1 | Plaintiff's declaration dated June 18, 2022.  See ECF No. 59-4, pgs. 3-23. |
| Exhibit 2 | Email from the United States Office of Personnel Management dated November 3, 2021, confirming Plaintiff's selection for the position of Contract Specialist with USFS with an effective date of appointment of December 5, 2021.  See ECF No. 59-4, pgs. 25-28. |
| Exhibit 3 | Email from Plaintiff to Gregory Wilde dated July 4, 2023, providing notice that Plaintiff believed he had been constructively discharged from his position as a Contract Specialist effective July 5, 2023.  See ECF No. 59-4, pg. 30. |
| Exhibit 4 | Plaintiff's declaration dated November 3, 2023.  See ECF No. 59-4, pgs. 32-72. |
| Exhibit 5 | Executive Order 14043 dated September 9, 2021.  See ECF No. 59-4, pgs. 74-75. |
| Exhibit 6 | USDA Frequently Asked Questions memo regarding USDA's response to COVID-19 and workplace safety, originally published on June 14, 2021, as revised on November 15, 2021.  See ECF No. 59-4, pgs. 77-105. |
| Exhibit 7 | Emails from "FS-Covid Testing" to Plaintiff dated May 11, 2022 (with copy to Justin Hicks), and July 13, 2022 (with copy to Gregory Wilde), providing notice to employees enrolled in the COVID-19 Screening Testing Program.  See ECF No. 59-4, pgs. 107-108. |
| Exhibit 8 | Highlighted excerpts from the transcript of the deposition of Emilee Blount taken on August 25, 2025.  See ECF No. 59-4, pgs. 110-12.  Plaintiff has not lodged the complete certified copy of the deposition transcript with the Court. |
| Exhibit 9 | COVID-19 Screening Testing Guidance for USDA Employees dated April 28, 2022.  See ECF No. 59-4, pgs. 114-21. |
| Exhibit 10 | Screen capture of a Zoom chat session on May 24, 2022, with Plaintiff, Emilee Blount, and Douglas Parrish.  See ECF No. 59-4, pg. 123. |
| Exhibit 11 | Email from Plaintiff to Ms. Blount dated May 24, 2022; email from Ms. Blount to Plaintiff dated May 25, 2022; email from Plaintiff to Ms. Blount dated May 25, 2022; email from Ms. Blount to Plaintiff dated May 27, 2022; email from Plaintiff to Ms. Blount dated May 26, 2022.  See ECF No. 59-4, pgs. 125-129. |

| | |
|---|---|
| Exhibit 12 | Defendant's supplemental responses to Plaintiff's requests for production, set one.  See ECF No. 59-4, pgs. 131-34. |
| Exhibit 13 | Highlighted excerpts from the transcript of the deposition of Gregory Wilde taken on August 1, 2025.  See ECF No. 59-4, pgs. 136-41.  Plaintiff has not lodged the complete certified copy of the deposition transcript with the Court. |
| Exhibit 14 | Highlighted excerpts from the transcript of Plaintiff's deposition taken on January 14, 2026.  See ECF No. 59-4, pgs. 143-58.  Defendant has lodged the complete certified copy of the transcript for the deposition in support of his motion for summary judgment. |
| Exhibit 15 | Email from Shannon Smith to Lawrence Medina dated March 19, 2022 (copies to Plaintiff, Justin Hicks, and Lorrie Baines).  See ECF No. 59-4, pg. 160. |
| Exhibit 16 | Email from Justin Hicks to Dennis O'Brien and Brian Walker dated March 28, 2022 (copies to Plaintiff, Lorrie Baines, and Matthew Gagnon).  See ECF No. 59-4, pg. 162. |
| Exhibit 17 | Declaration of Matthew Gagnon dated June 16, 2022.  See ECF No. 59-4, pgs. 164-74. |
| Exhibit 18 | Email from Mariah Rimmer to Matthew Gagnon dated January 27, 2022; email from Mr. Gagnon to Ms. Rimmer dated January 27, 2022; email from Mr. Gagnon to Ms. Rimmer dated November 19, 2021; email from Ms. Rimmer to Mr. Gagnon dated November 19, 2021; email from Mr. Gagnon to Ms. Rimmer dated November 19, 2021 (copies to Shannon Smith, Lisa Ewing, Lawrence Medina).  See ECF No. 59-4, pgs. 176-77. |
| Exhibit 19 | Declaration of Richard Getchell dated March 14, 2023.  See ECF No. 59-4, pgs. 179-84. |
| Exhibit 20 | Declaration of Laura Trujillo dated March 14, 2023.  See ECF No. 59-4, pgs. 186-92. |
| Exhibit 21 | Letter from Plaintiff's health insurance carrier, Blue Cross Blue Shield, dated March 22, 2023.  See ECF No. 59-5, pg. 3. |
| Exhibit 22 | Letter from Plaintiff's health insurance carrier, Blue Cross Blue Shield, dated March November 9, 2022.  See ECF No. 59-5, pg. 5. |
| Exhibit 23 | Undated email to Plaintiff regarding Plaintiff's FEHB benefits.  See ECF No. 59-5, pg. 7. |
| Exhibit 24 | Plaintiff's declaration dated March 1, 2023.  See ECF No. 59-5, pgs. 9-17. |

14

| | |
|---|---|
| Exhibit 25 | Email from Plaintiff to Gregory Wilde dated June 17, 2022; email from Plaintiff to Mr. Wilde dated July 7, 2022; email from Plaintiff to Mr. Wilde dated October 28, 2022; email from Mr. Wilde to Plaintiff dated October 28, 2022; email from Plaintiff to Mr. Wilde dated November 9, 2022; email from Plaintiff to Mr. Wilde dated June 16, 2023.  See ECF No. 59-5, pgs. 19-23. |
| Exhibit 26 | Email from Mr. Wilde to Malonie Burnham dated November 6, 2023; email from Ms. Burnham to Mr. Wilde dated November 6, 2023; email from Ms. Burnham to Mr. Wilde dated November 6, 2023.  See ECF No. 59-5, pg. 25. |
| Exhibit 27 | Highlighted excerpts from the transcript of the deposition of Malonie Burnham taken on September 11, 2025.  See ECF No. 59-5, pgs. 27-32.  Plaintiff has not lodged the complete certified copy of the deposition transcript with the Court. |
| Exhibit 28 | Plaintiff's declaration dated December 18, 2023.  See ECF No. 59-5, pgs. 34-48. |
| Exhibit 29 | CNN article entitled "Biden announces measures to incentivize Covid-19 vaccinations, including a requirement for federal employees," dated July 29, 2021.  See ECF No. 59-5, pgs. 50-54. |
| Exhibit 30 | Declaration of Justin Hicks dated June 23, 2022.  See ECF No. 59-5, pgs. 56-65. |
| Exhibit 31 | Email from Plaintiff to Justin Hicks dated April 26, 2022.  See ECF No. 59-6, pg. 3. |
| Exhibit 32 | Plaintiff's undated request for reasonable accommodation regarding testing requirements.  See ECF No. 59-6, pgs. 5-7. |
| Exhibit 33 | January 21, 2021, updated guidelines issued by the Centers for Disease Control and Prevention entitled "Workplace SARS-CoV-2 Testing: Consent Elements and Disclosures."  See ECF No. 59-6, pgs. 9-11. |
| Exhibit 34 | Email from Emilee Blount to Michael Doyle dated May 20, 2022.  See ECF No. 59-6, pg. 13. |
| Exhibit 35 | Plaintiff's declaration dated July 12, 2022.  See ECF No. 59-6, pgs. 15-36. |
| Exhibit 36 | Email from Plaintiff to Mr. Wilde dated November 4, 2022.  See ECF No. 59-6, pg. 38. |
| Exhibit 37 | Declaration of Nikita Donovan dated March 27, 2023.  See ECF No. 59-6, pgs. 40-41. |

///

15

Exhibit 38     Email from Ryan Barthel to Plaintiff dated November 17, 2022.  See ECF No. 59-6, pgs. 43-44.

Exhibit 39     Declaration of Mariah Rimmer dated March 21, 2023.  See ECF No. 59-6, pgs. 46-52.

Exhibit 40     Plaintiff's declaration dated March 24, 2023.  See ECF No. 59-6, pgs. 54-63.

Exhibit 41     Email from Plaintiff to Mr. Wilde dated June 1, 2023; email from Plaintiff to Mr. Wilde dated May 3, 2023.  See ECF No. 59-6, pgs. 65-66.

Exhibit 42     Plaintiff's formal equal employment opportunity complaint for discrimination.  See ECF No. 59-6, pgs. 68-69.

Exhibit 43     United States Office of Personnel Management Notification of Personnel Action dated April 21, 2023; United States Office of Personnel Management Notification of Personnel Action dated August 18, 2022.  See ECF No. 59-6, pgs. 71-72.

Exhibit 44     Email from Brandy Billie-Moore to Plaintiff dated June 14, 2022.  See ECF No. 59-6, pg. 74.

## C.     **Defendant's Objections**

In his reply brief, Defendant objects to the Court's consideration of excerpts from the transcripts of the depositions of Emilee Blount, Gregory Wilde, and Malonie Burnham, all offered by Plaintiff in support of his opposition.  See ECF No. 61-1.  The Court does not rely on those depositions in determining this motion.

## III.  DISCUSSION

In the motion for summary judgment, Defendant argues: (1) Plaintiff's retaliation claim (First Claim) fails because: no adverse action was taken; and Plaintiff cannot show that an employment-related action occurred due to Plaintiff engaging in a protected activity; (2) Plaintiff's disparate treatment claim (Second Claim) fails because: Plaintiff has no direct evidence of religious discrimination; Plaintiff has no circumstantial evidence of religious discrimination; and Defendant had legitimate non-discriminatory reasons for taking the actions he did and Plaintiff cannot establish pretext; (3) Plaintiff's hostile work environment claim (Third Claim) fails because Plaintiff cannot establish conduct which was severe and pervasive; and (4)

16

Plaintiff's constructive discharge claim (Fourth Claim) fails because Plaintiff cannot establish that his working conditions which a reasonable person would consider intolerable and discriminatory. See ECF No. 56.

**A.    <u>Violation of Title VII of Civil Rights Act (Retaliation)</u>**

To establish a prima facie case of Title VII retaliation, a plaintiff must show: "(1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." <u>Ray v. Henderson</u>, 217 F.3d 1234, 1240 (9th Cir. 2000). An adverse action, for the purposes of a retaliation claim, requires showing that the action is "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." <u>Burlington N. & Santa Fe Ry. v. White</u>, 548 U.S. 53, 57 (2006). Once such prima facie showing is made, defendant then bears the burden to "to articulate a legitimate nondiscriminatory reason for its decision." <u>Ray</u>, 217 F.3d at 1240 (internal citations omitted). If defendant is able to provide a legitimate nondiscriminatory reason for such action, plaintiff is required to "produce specific substantial evidence of pretext . . . [however, the plaintiff] need[s to] produce very little evidence of discriminatory motive to raise a genuine issue of fact as to pretext." <u>Payne v. Norwest Corp.</u>, 113 F.3d 1079, 1080 (9th Cir. 1997) (internal citations omitted). Only upon plaintiff showing a genuine issue of fact as to pretext "does the case proceed beyond the summary judgment stage." <u>Brooks v. City of San Mateo</u>, 229 F.3d 917, 928 (9th Cir. 2000).[2]

Defendant argues that "the HR-related issues [Plaintiff] identifies are not adverse employment actions" and "Plaintiff cannot establish causation" between his protected activity and the "issues" Plaintiff alleges. ECF No. 56-1, pgs. 10-13. Further, Defendant contends that there are legitimate, nondiscriminatory reasons for such "issues," and "Plaintiff cannot marshal specific and substantial evidence of pretext." <u>Id.</u> at 10. Plaintiff argues that he "engaged in

---

[2] The holding of this case was abrogated in part by the California legislature as to the Ninth Circuit holding "that a single incident of nonviolent sexual assault [] did not rise to the level of actionable harassment." <u>Ramirez v. Quad Graphics, Inc.</u>, No. EDCV 23-62 JGB (KKx), 2023 U.S. Dist. LEXIS 79137, at *23 (C.D. Cal. May 4, 2023). This Court's reliance on <u>Brooks</u> is unrelated to the abrogated portion.

protected EEO activity on November 16, 2021, when he requested a reasonable accommodation to Defendant's vaccination mandate" and "on March 27, 2022, when he filed a formal EEO complaint against Defendant." ECF No. 59, pgs. 11-12. Plaintiff contends that "Defendant subjected Plaintiff to adverse employment actions by withholding Plaintiff's pay, withholding Plaintiff's work computer, and terminating Plaintiff's health insurance." Id. at 12. Plaintiff asserts that, "[w]hile Plaintiff establishes a direct causal link between Plaintiff's protected EEO activity and Defendant's adverse employment actions based on timing, Plaintiff's retaliation claim does not rely solely upon that timing." ECF No. 59, pg. 16.

The Court accepts that Plaintiff's representation, which Defendant does not challenge, that he engaged in protected activity "on November 16, 2021, when he requested a reasonable accommodation to Defendant's vaccination mandate" and "on March 27, 2022,[3] when he filed a formal EEO complaint against Defendant." Thus, the Court turns to the second element, whether Plaintiff suffered adverse actions.

Defendant argues that none of the actions Plaintiff points to "'materially affect the compensation, terms, conditions, or privileges of the [plaintiff's] employment.'" ECF No. 56-1, pg. 9 (quoting Chuang v. Univ. of Cal. Davis Bd. of Trustees, 225 F.3d 1115, 1126 (9th Cir. 2000)). Defendant contends "Plaintiff's HR-related issues were all ultimately resolved, and thus by definition could not have materially affected the terms of his employment with the USFS." Id. Defendant additionally argues that Plaintiff fails to establish the causal link necessary for a prima facie showing. See id. at 11. Defendant asserts that "Plaintiff relies exclusively on the temporal proximity of his reasonable accommodation requests to the HR-related issues," and such reliance requires a closer temporal proximity than Plaintiff's protected

---

[3] Though the Court accepts this as true because Defendant includes it in the statement of undisputed facts, Plaintiff provides no documentation or information about the March 27, 2022, EEO complaint. Plaintiff provides his formal EEO complaint against Defendant, filed December 29, 2022. See ECF No. 59-6, pgs. 68-69 (Exhibit 42). But the Court could not find reference to a March 27, 2022, EEO complaint, aside from SUF 11, where Defendant stated such a complaint was filed, citing Plaintiff's amended complaint as evidence. See ECF No. 59-1, pg. 5. The Court expresses concern about the lack of evidence of such complaint, given Plaintiff relies on it to support his retaliation claim.

18

activity and the alleged adverse actions. Id. at 12. The Court addresses each alleged adverse action in turn.

### 1.    Delay in Pay

Plaintiff asserts that he began work on February 14, 2022, but did not receive his first paycheck until March 21, 2022. See SDF 6 (ECF No. 59-2, pg. 2) and SUF 21 (ECF No. 59-1, pg. 8). Plaintiff maintains that he engaged in protected activity on November 16, 2021, and on March 27, 2022, when he filed a formal EEO complaint against Defendant. Plaintiff does not explain, nor provide documentation of this March 27, 2022, EEO complaint, but it would follow that Plaintiff's complaint accused Defendant of discrimination. If Plaintiff filed a complaint accusing Defendant of discrimination after his pay was delayed, the Court is doubtful it could conclude that a reasonable person would be dissuaded from making a claim of discrimination due to this delay in pay, because Plaintiff himself did make a claim of discrimination after his pay was delayed. However, the Supreme Court is clear that the standard for determining an adverse action is objective, not subjective. See Ray, 217 F.3d 1234. Determining a delay in pay would not dissuade a reasonable person based off Plaintiff filing such a complaint may be viewed as applying a subjective standard.  Given the absence of documentation of the contents of the March 27, 2022, EEO complaint, and out of an abundance of caution to avoid imposing a subjective standard, the Court declines to conclude that Plaintiff's subsequent EEO complaint demonstrates that his delay in pay was not an adverse action.

Defendant contends that the delay in Plaintiff's pay was due to "several data field entry errors," which were subsequently corrected, and Plaintiff ultimately was paid, in full. ECF No. 56-1, pg. 4. Plaintiff asserts that "going unpaid for over a month while continuing to perform full-time work during that time" constitutes an adverse employment action. ECF No. 59, pgs. 12-13. The Court is not convinced that a delay in pay, which was corrected by Defendant, constitutes an adverse employment action. See Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000) (concluding that because the adverse actions alleged by Plaintiff were not final and Defendant remedied the issue, the District Court did not err in dismissing

19

Plaintiff's retaliation claim at summary judgment). However, even assuming the delay in pay was an adverse action, the Court finds that Plaintiff fails to establish a causal link between the protected activity and the adverse action.

Plaintiff contends that the causal link between his delay in pay is established by the timing, because the delay in his pay occurred "less than three (3) months after Plaintiff made his reasonable accommodation request." ECF No. 59, pg. 15 (citing Passantino v. Johnson & Johnson Consumer Prods., 212 F.3d 493, 507 (9th Cir. 2000) and Strother v. S. Cal. Permanente Medical Group, 79 F.3d 859, 870-71 (9th Cir. 1996). Defendant argues that "[w]hile temporal proximity may create an inference of retaliation, the two events must be very close." ECF No. 56-1, pg. 12 (citing Clark County School District v. Breeden, 532 U.S. 268, 273-74 (2001); Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997); Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002); Cornwell v. Electra Central Credit Union, 439 F.3d 1018, 1036 (9th Cir.2006)).

The Court agrees with Defendant. Though the Ninth Circuit has held that temporal proximity alone may provide sufficient circumstantial evidence of causation to allow a retaliation claim to go to a jury, the facts of those cases are distinguishable. Cf. Stegall v. Citadel Broad. Co., 350 F.3d 1061 (9th Cir. 2003) (adverse action taken nine days after protected activity); Dawson v. Entek Int'l, 630 F.3d 928 (9th Cir. 2011) (adverse action taken less than two days after protected activity); Davis v. Team Elec. Co., 520 F.3d 1080 (9th Cir. 2008) (adverse action taken three days after protected activity). Further, following the Ninth Circuit decisions of Passantino and Strother, the cases Plaintiff relies on, the Supreme Court held:

> The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be "very close," *Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (CA10 2001). **See *e.g., Richmond v. Oneok, Inc.,* 120 F.3d 205, 209 (CA10 1997) (3-month period insufficient);** *Hughes v. Derwinski*, 967 F.2d 1168, 1174-1175 (CA7 1992) (4-month period insufficient). Action taken (as here) 20 months later suggests, by itself, no causality at all.
>
> Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001)(emphasis added).

Plaintiff inquired about a reasonable accommodation request on November 16, 2021, and began work 90 days later on February 14, 2022.  Plaintiff asserts that "Defendant's withholding of Plaintiff's pay and work computer occurred immediately upon Plaintiff starting his position on February 14, 2026,[4] less than three (3) months after Plaintiff made his reasonable accommodation." ECF No. 59, pg. 15. However, Plaintiff never alleges, nor provides evidence to show, that he should have been paid on the day he started work on February 14, 2022. Indeed, Plaintiff conceded in oral arguments that his pay was not due on February 14, 2022. Thus, the Court finds that there were three months between Plaintiff's protected activity and the delayed pay, which the Supreme Court cited as an insufficient period to establish a causal connection based on temporal proximity alone.

Plaintiff provides no additional argument or evidence of a causal connection between withholding Plaintiff's pay and his protected activity. Plaintiff makes a general argument that HR Specialist Rimmer "was also directly involved in Plaintiff's failed onboarding. SDF 27. That failed onboarding caused many of the adverse employment actions against Plaintiff by Defendant's own admission. SDF 25-27." ECF No. 59, pg. 16. Plaintiff additionally alleges that "HR Specialist Rimmer made false and unsupported allegations about Plaintiff in her sworn testimony. SDF 30. Plaintiff testified that those false allegations seem to indicate animosity toward Plaintiff, which may likely have motivated HR Specialist Rimmer to retaliate against Plaintiff. SDF 30." Id. at 9.

However, the evidence Plaintiff provides to show that his pay was delayed and establish the reason the pay was delayed is Exhibit 15. See ECF No. 59-1, pgs. 8-9, SUF 23. That email exchange does not include Ms. Rimmer, ECF No. 59-4, pgs. 160, nor does Plaintiff cite to any evidence that Ms. Rimmer's actions resulted in Plaintiff's delayed pay. Indeed, Plaintiff never even makes that allegation, beyond the general conclusory allegation that she was "involved in Plaintiff's failed onboarding . . . that caused many of the adverse employment actions." Absent evidence, nor argument, to establish causation beyond temporal proximity, the

---

[4] The Court assumes this is a typo and Plaintiff means February 14, 2022.

Court does not find Plaintiff met the burden to establish the casual link required for a prima facie showing that the delay in Plaintiff's pay was a retaliatory action.  The Court finds that, even if it were to find that Plaintiff established a prima facie showing of retaliation as to the delay in his pay, this claim would suffer the same failure to establish pretext, as addressed in the following section. Thus, undersigned will grant Defendant's motion for summary judgement as to Plaintiff's retaliation claim alleging that withholding his pay constituted retaliation under Title VII.

2.    Withholding Plaintiff's Work Computer

The Court again notes that Plaintiff engaging in protected activity on March 27, 2022, after his computer was withheld, and that Defendant remedied the issue by providing Plaintiff with a computer may indicate that the delay in Plaintiff receiving his computer does not constitute an adverse action. However, the Court will again assume it was an adverse action and will therefore consider whether Plaintiff established a prima facie showing of causation here, which the Court finds Plaintiff does.

a.    *Causal Link*

As to temporal proximity, the Court finds the determination that the time between Plaintiff's protected action and when Plaintiff did not receive his computer is insufficient to establish causation alone, as previously addressed with regard to Plaintiff's delayed pay. Plaintiff additionally argues that he establishes a causal link between his protected activity and the delay in his computer because "Plaintiff made his reasonable accommodation request directly to HR Specialist Rimmer. SDF 4. HR Specialist Rimmer was directly involved in procuring Plaintiff's work computer." ECF No. 59, pg. 16 (citing SDF 7, 31).

Lack of temporal proximity does not indicate a lack of causal link and therefore, causation can be established through additional conduct and circumstantial evidence. See Porter v. Cal. Dep't of Corr., 419 F.3d 885, 895 (9th Cir. 2005). Plaintiff relies on Plaintiff's Exhibit 18 to show that Ms. Rimmer "was directly involved in procuring Plaintiff's work computer." ECF No. 59-2, pg. 6 (SDF 31). Exhibit 18 shows an email exchange between Mr. Gagnon and Ms. Rimmer, beginning November 19, 2021. The Court finds this email exchange indicates that

22

Ms. Rimmer, was directly involved in the steps necessary to proceed with the request for Plaintiff's work computer. Plaintiff additionally alleges that he made his November 16, 2021, reasonable accommodations request to Ms. Rimmer. Upon that showing, the Court concludes this is evidence provides the minimum necessary to show the individual aware of Plaintiff's protected activity was directly involved with the process of requesting Plaintiff's work computer, and therefore establishes a prima facie showing of causation. Thus, the burden shifts to Defendant to articulate a legitimate nondiscriminatory reason for the delay in Plaintiff receiving his computer.

           b.       *Defendant's Burden to Show Legitimate Nondiscriminatory Reason*

Defendant contends that, generally, Plaintiff's alleged adverse actions "resulted from administrative hiccups in Plaintiff's transfer from the BLM to the USFS or the unique operating dynamic caused by COVID-19." ECF No. 56-1, pg. 11. With regard to Plaintiff's computer, Defendant specifically cites to SUF 27-29 as evidence to show the delay was due to Plaintiff's supervisor's request not being accepted, the system not generating a shipping date, and "[a] backlog during Plaintiff's onboarding evidently exacerbated the delay." Id. at 4-5. Plaintiff denies SUF 27 and 29, citing the Affidavit of Mr. Gagnon. See ECF No. 59-1, pg. 10.

Accepting Plaintiff's evidence as true, it does not appear to challenge Defendant's assertion that the delay in Plaintiff's computer was due to a legitimate nondiscriminatory reason: "administrative hiccups in Plaintiff's transfer from the BLM to the USFS or the unique operating dynamic caused by COVID-19." ECF No. 56-1, pg. 11. Indeed, the cited evidence shows that Mr. Gagnon believed the delay occurred "during the hiring process and his Active Directory Profile was not set in the Human Resource's system correctly, which led to all the issue with the onboarding which caused issues with his pay, computer, leave and transition from his other agency." ECF No. 59-6, pg. 166.  Mr. Gagnon explicitly referenced Plaintiff's transition from BLM to USFS as a possible underlying cause of Plaintiff's "Active Directory Profile" not being "set in the Human Resource's system correctly." Id. Thus, the Court finds that Defendant has sufficiently provided a legitimate nondiscriminatory reason to shift the burden back to Plaintiff to provide evidence of pretext.

23

c.    *Plaintiff's Evidence of Pretext*

Plaintiff argues that there is "direct evidence of pretext" in the form of a CNN article published July 29, 2021. ECF No. 59, pgs. 26-28. According to Plaintiff, the article states that: "'The goal of the requirement, Biden aides [footnote omitted] have said, is to render being unvaccinated **so burdensome** that those who haven't received shots will have little choice other than to get them.'SDF 1." Id. at 27 (quoting ECF No. 59-5, pgs. 50-54 (Exhibit 29)) (emphasis added by Plaintiff).

Plaintiff argues that "Executive Branch officials brazenly and unambiguously admitted that the requirement's public health façade was mere pretext for rendering 'being unvaccinated **so burdensome**' that federal workers would 'have little choice other than' to violate their own sincerely held religious beliefs, and submit to Defendant's vaccination mandate to retain their careers and livelihoods. SDF 1." ECF No. 59, pg. 27 (emphasis added by Plaintiff). Plaintiff contends that "the quote is direct evidence of pretext because it proves the fact of discriminatory motive without inference or presumption." Id. According to Plaintiff:

> Moreover, if the true goal of Defendant's vaccination mandate was to make being unvaccinated "so burdensome" that employees had "little choice other than to get" vaccinated, as Executive Branch officials stated, then Defendant had every incentive to create the kind of hostile work environment to which Plaintiff was subjected here. SDF 1. Thus, pretext explains Defendant's withholding of Plaintiff's pay and work computer, Defendant's enrolling of Plaintiff into a discriminatory testing program against Plaintiff's will, Defendant's withholding of software from Plaintiff that was provided to Plaintiff's vaccinated co-workers, and Defendant terminating Plaintiff's health insurance policy. SUF 21; SDF 7, 13-14, 22, 36-39.
>
> Objectively, here, the totality of those circumstances supports the notion that the true purpose of Defendant's vaccination requirement was to make remaining unvaccinated in the federal service "so burdensome" that employees would submit to the mandate, a fact to which Executive Branch officials themselves publicly admitted. SDF 1.
>
> Thus, Defendant was more likely than not motivated by the discriminatory intent to make obtaining a reasonable accommodation to the mandate "so burdensome" that federal employees would "have little choice" but to betray their own sincerely held religious beliefs to retain their careers and livelihoods. That much is evident based on the public statements of Executive Branch officials combined with Defendant's discriminatory conduct established herein. Therefore, Defendant's excuses for their discriminatory conduct, such as mere "HR hiccups" or "the unique operating dynamic caused by the COVID-19" are not credible based on the evidence presented.
>
> The above-cited quote from Executive Branch officials also defeats the legitimacy of Defendant's publicly claimed non-discriminatory reason for the vaccination requirement because it exposes the requirement's true intention,

24

which was to "render being unvaccinated so burdensome" that unvaccinated employees would violate their sincerely held religious beliefs and submit to Defendant's vaccination mandate. SDF 1.

Id. at 27-28.

The Court finds that Plaintiff's evidence and argument regarding pretext is an argument that the vaccine mandate program is pretextual. Plaintiff then relies on a non sequitur to establish that, if the vaccine mandate program was pretextual, Defendant withholding Plaintiff's computer was also pretextual. However, Plaintiff does not provide any evidence that withholding Plaintiff's computer itself was pretextual. Plaintiff only provides a conclusory allegation that, if the mandate was pretextual, "pretext explains Defendant's withholding of Plaintiff's pay and work computer." ECF No. 59, pg. 27. Plaintiff provides no explanation, evidence, or argument to connect the allegation of a pretextual vaccine mandate program to the withholding of Plaintiff's computer.

Further, the cited evidence does not show that the vaccine mandate program was pretextual. The article was published 42 days before Executive Order 14043 was issued and the article, and comments from unidentified "Biden aides" were not in response to that Executive Order but rather, "a number of new steps [the Biden] administration will take to try to get more Americans vaccinated and slow the spread of coronavirus, including requiring that all federal employees must attest to being vaccinated against Covid-19 or face strict protocols." ECF No. 59-5, pg. 50. The "new steps" implemented in July 2021, did not include Executive Order 14043. See ECF No. 59-5, pgs. 51-52. Thus, this article predated Executive Order 14043 and the comment about "the goal of the requirement" was not addressing the requirements of Executive Order 14043. Given this, the Court does not find this article provides evidence that the Executive Order 14043 was pretextual because the comments Plaintiff relies on were not discussing that Executive Order.

Most important, nothing in the article indicates discriminatory motive. Though Plaintiff characterizes this article providing direct evidence of pretext, pretext requires showing of discriminatory motive. See Payne, 113 F.3d at 1080. Here, Plaintiff contends that this quote shows that "requirement's public health façade was mere pretext for rendering 'being

25

unvaccinated **so burdensome**' that federal workers would 'have little choice other than' to violate their own sincerely held religious beliefs, and submit to Defendant's vaccination mandate to retain their careers and livelihoods." ECF No. 59, pg. 27 (emphasis added by Plaintiff). However, nothing in the quote Plaintiff references, or in the article, supports a finding of discrimination towards a protected class. At most, Plaintiff alleges that the article shows there was a motive to compel individuals to be vaccinated. But vaccination status is not a protected class. The statement Plaintiff relies on does not address protected classes. Thus, the Court finds this article does not provide evidence of pretext because it fails to show any discriminatory motive.

Plaintiff then asserts there is "indirect evidence of pretext" as to the purpose of the vaccination program based on the "shifting justifications cited by Defendant for his discriminatory COVID-19 testing program." Id. at 28.  It appears Plaintiff is arguing that these shifting justifications "'indirectly [] show[] that the employer's proffered explanation is unworthy of credence.'" ECF No. 59, pg. 26 (quoting Stegall v. Citadel Broad. Co., 350 F.3d 1061, 1066 (9th Cir. 2003)). In support of this claim, Plaintiff cites SDF 16-19. ECF No. 59-2, pg. 4. Only SDF 17 and 18 address the purpose of the COVID-19 Screening Testing Program, relying on Exhibits 1, 10, and 11 as evidence.

The Court finds that none of these exhibits establish that there were shifting justifications for the COVID-19 Screening Testing Program. In Exhibit 1, Plaintiff's affidavit, Plaintiff states that the reason for testing unvaccinated employees was "[i]nitially it was to prevent the transmission of covid, but then the science demonstrated that vaccinated people could contract and transmit covid. Then the Agency's stated grounds became that unvaccinated people were a danger to themselves and had to be constantly tested for their own good." ECF No. 59-4, pg. 19. In Exhibit 10, Ms. Blount states in a message sent on May 24, 2022, that the reason for the program is "unvaccinated individuals have a higher risk for complicated medical conditions, hospitalization or death, federal government has implemented a screening testing program as a preventative measure to ensure the safety of the unvaccinated employees." ECF No, 59-4, pg. 123.  Exhibit 11 is an email sent by Ms. Blount on May 24, 2022, where she

26

states: "The Purpose of screening testing is to ensure the safety of the Federal Workforce and an unvaccinated employee who contracts COVID has a higher risk of medical care/hospitalization and potentially death." ECF No. 59-4, pg. 127.

The Court finds none of this evidence shows shifting justifications. Exhibit 1 is merely Plaintiff's conclusory allegation that there were shifting justifications but is not itself evidence of shifting justifications. Indeed, Plaintiff's characterization that the "stated grounds became that unvaccinated people were a danger to themselves and had to be constantly tested for their own good," does not reflect the reason provided by Ms. Blount, which Plaintiff relies on as evidence of the justification for the program.  Further, Exhibit 11 shows the justification provided was both the safety of the entire Federal Workforce, which would include unvaccinated and vaccinated individuals, and to protect unvaccinated employees. Thus, the evidence does not support Plaintiff's claim that the justification shifted, but rather that there were two reasons for the program. None of the evidence establishes shifting justifications as Plaintiff alleges.

Finally, again, the Court finds Plaintiff's allegation of shifting justifications are that the reason for the COVID-19 Screening Testing Program shifted – not that the reasons Defendant provided for why Plaintiff's computer was delayed changed. Thus, even if there were shifting justifications for the COVID-19 Screening Testing Program, which the Court does not find, that is not evidence that Defendant's legitimate nondiscriminatory reason explaining the delay in Plaintiff receiving his computer is "unworthy of credence." Plaintiff's claim there is indirect evidence of pretext again does not address the alleged adverse action. Plaintiff is asking the Court to assume that if the reasons for the COVID-19 Screening Testing Program are unworthy of credence, so too is Defendant's legitimate nondiscriminatory reason for the delay in Plaintiff receiving his computer, without providing any evidence or connection between the two.

/ / /

/ / /

/ / /

27

The Court finds that, even considering the low standard for establishing pretext, Plaintiff fails to present any direct or indirect evidence that the withholding of Plaintiff's computer was pretextual.  Accordingly, the undersigned will grant the motion for summary judgment as to Plaintiff's retaliation claim arising from the delay in his computer.

### 3.    Terminating health benefits

Defendant asserts that though "there were issues transferring Plaintiff's Federal Employee Health Benefits ("FEHB") (health insurance benefits) from the BLM to the USFS," Plaintiff's health benefits were never terminated, and therefore cannot constitute an adverse action. ECF No. 56-1, pg. 5. Plaintiff argues there is evidence his health benefits were terminated in the "two (2) confirmatory letters from Plaintiff's health insurance carrier, by Plaintiff's documented human resources management case to restore his benefits, and by Plaintiff's own sworn testimony." ECF No. 59, pg. 14 (citing Declaration of Casey G. Lowe ("Lowe Dec."), Ex. 14, p. 46:7-22; Ex. 21-23; Ex. 24, p. 4, #12).

The Court is not convinced that the evidence Plaintiff provides establishes that his health benefits were terminated because the letters cited by Plaintiff do not say that his health benefits were terminated. Plaintiff's Exhibit 22 and 21 say "our records show [Plaintiff] is not enrolled," ECF No. 59-5, pg. 5, and "during that coverage window between July 2nd, 2022 and November 17th, 2022 the member did show as terminated from the plan," id. at 3. Thus, the letters do not state that Plaintiff's benefits were terminated but that the *records show* he was terminated. This phraseology implies that while the records show Plaintiff was terminated from the plan, Plaintiff still retained health benefits. This is supported by the fact, which Plaintiff concedes, that "even though his health insurance was cancelled July 2, 2022, the premiums were being deducted from his pay checks." Id. at 12 (Exhibit 24).  Thus, it is not clear that Plaintiff provides evidence to show that his health benefits were actually terminated. However, the Court acknowledges that Plaintiff was informed by "the office manager who handles the insurance at that office" that his health insurance was cancelled. ECF No. 59-4, pg. 145. However, even assuming Plaintiff established that his health benefits were terminated and such termination constituted an adverse action, the Court finds the claim still fails for the

reasons cited below.

Plaintiff would next need to establish causation. The time between Plaintiff's protected activity on November 16, 2021, and the alleged termination of his health benefits, July 2, 2022, was 229 days, which is insufficient temporal proximity to establish causation, as previously explained. The time between Plaintiff's protected activity on March 27, 2022, and the alleged termination of his health benefits, July 2, 2022, was 98 days, also insufficient temporal proximity to establish causation. As with Plaintiff's claim that his delay in pay constituted retaliation, Plaintiff does not provide any specific evidence or argument that there is any additional evidence of a causal connection as to the termination of Plaintiff's health benefits aside from temporal proximity.  Thus, the Court finds this claim to lack a causal connection necessary for a prima facie showing.

Finally, even if Plaintiff were able to establish a prima facie showing as to this claim, Defendant adequately provides a nondiscriminatory explanation for this – issues that arose from Plaintiff transferring from BLM to USFS. Indeed, the evidence Plaintiff provides supports this. In Exhibit 19, Mr. Getchell explains in his affidavit that "handles approximately 5 cases a week that involve healthcare issues of transferring employees." ECF No. 59-4, pg. 182. Thus, Plaintiff's own evidence supports a finding that this health care issue is not uncommon when individuals transfer between agencies and therefore, not discriminatory. Finally, Plaintiff also fails to provide evidence that his alleged termination of health benefits was pretextual, as explained in the prior section. Though Plaintiff does not provide this argument nor cite to SUF 33, the Court acknowledges that Plaintiff alleges in his denial of SUF 33 that he was provided "multiple conflicting explanations regarding the termination of Plaintiff's FEHB." ECF No. 59-1, pg. 12. The Court therefore considered whether the evidence cited in support provides indirect evidence of pretext and found it does not because Plaintiff's cited evidence does not provide conflicting explanations nor challenge Defendant's legitimate nondiscriminatory explanation. The cited evidence is: Exhibit 24, pg. 4, #14, Exhibit 19, pg. 3, #12, and Exhibit 20, pg. 3, #12.

///

29

In Exhibit 24, Plaintiff's affidavit, Plaintiff states that he "received several contradictory answers from various HR personnel, none of which made any sense. Most of the answers typically centered around "administrative error", but the answers were not consistent." ECF No. 59-5, pg. 12. The Court finds this is a conclusory allegation that alleges Plaintiff was provided "contradictory answers," without evidence or allegations as to what those contradictory answers were. Plaintiff alleging he was given contradictory answers, without more, is insufficient to find a genuine dispute of fact and does not constitute indirect evidence that Defendant's legitimate nondiscriminatory explanation is unworthy of credence.

In Exhibit 19, Getchell explains "what happened to Complainant's healthcare benefits," in their affidavit, explaining that "there were clerical errors by the Forest Service HR PAR unit during his onboarding." ECF No. 59-4, pg. 181. The Court finds this explanation does not contradict nor challenge Defendant's legitimate nondiscriminatory explanation, indeed, it supports Defendant's claim. The same is true for Exhibit 20, Trujillo's affidavit, which states: "Trujillo explained that Complainant was initially onboarded as a new hire instead of a transferee. Because of this, she further explained that this coding was inaccurate and showed that the Complainant hadn't been enrolled for health insurance yet." Id. at 188. Again, this evidence supports Defendant's legitimate nondiscriminatory explanation and therefore Plaintiff fails to provide indirect evidence that establishes that Defendant's legitimate nondiscriminatory explanation is unworthy of credence. By failing to provide direct or indirect evidence of pretext, the Court finds Plaintiff has not met his burden to show pretext with regard to termination of healthcare benefits.

Given Plaintiff failed to establish a genuine dispute of fact as to each adverse action alleged within Plaintiff's retaliation claim, the undersigned will grant summary judgement as to Plaintiff's retaliation claim.

**B.      Violation of Title VII of Civil Rights Act (Disparate Treatment)**

A plaintiff "must carry the initial burden under the statute of establishing a prima facie case" of discrimination for a Title VII claim to proceed. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). This requires showing "(1) [Plaintiff] belongs to a protected

class; (2) [Plaintiff] was qualified for the position; (3) [Plaintiff] was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." Chuang v. Univ. of Cal. Davis, 225 F.3d 1115, 1123 (9th Cir. 2000) (citing McDonnell Douglas Corp., 411 U.S. at 802). Here, Defendant argues that Plaintiff cannot establish the third and fourth requirements. See ECF No. 56-1, pgs. 9-10. Defendant contends that Plaintiff "has identified no comparators similar to him in all material respects that would suggest a discriminatory intent," and Plaintiff was exempt from Executive Order 14043 due to his pending applications for exemptions. Id. at 10.

Plaintiff asserts that the adverse actions he suffered were a delay in his pay, Defendant withholding his work computer, termination of Plaintiff's healthcare benefits, and that Defendant withheld access to Adobe Acrobat DC Pro. See ECF No. 59, pgs. 17-18. However, Plaintiff does not argue nor provide evidence to show that similarly situated individuals did not experience a delay in pay or termination of healthcare benefits. See ECF No. 59. The Court additionally reviewed Plaintiff's amended complaint and found Plaintiff's disparate treatment claim only references Plaintiff not having access to Adobe Pro software and did not allege, nor provide any evidence to show, similarly situated individuals did not experience delay in pay nor termination of healthcare benefits. See ECF No. 5.

"The 'party opposing summary judgment must direct [the court's] attention to specific, triable facts,' and the reviewing court is 'not required to comb through the record to find some reason to deny a motion for summary judgment." Gordon v. Virtumundo, Inc., 575 F.3d 1040, 1058 (9th Cir. 2009) (internal citations omitted); see also Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1029 (9th Cir. 2001) (holding that "even if an affidavit is on file, a district court need not consider it in opposition to summary judgment unless it is brought to the district court's attention in the opposition to summary judgment"). Defendant's motion for summary judgment argued that Plaintiff failed to show the fourth element of disparate treatment was satisfied. Yet, Plaintiff did not direct the Court to any evidence or make an argument that similarly situated individuals were treated differently as to the delay in pay and termination of healthcare benefits. Indeed, in oral arguments, Plaintiff conceded that he did not provide such

31

evidence in his opposition. Thus, the Court finds Plaintiff fails to establish a disparate treatment claim as to the alleged adverse actions of the delay in pay and termination of healthcare benefits. The Court will now turn to Plaintiff's remaining claims that he suffered the adverse actions of a delay in receiving his work computer and was not given access to Adobe Acrobat DC Pro, and similarly situated individuals were treated more favorably.

To establish a prima facie showing as to the fourth element that similarly situated individuals were treated more favorably, a plaintiff "must demonstrate, at the least, that they are similarly situated to those employees in all material respects." Moran v. Selig, 447 F.3d 748, 755 (9th Cir. 2006). An opposing party "cannot defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." Hernandez v. Spacelabs Med., Inc., 343 F.3d 1107, 1112 (9th Cir. 2003) (citations omitted). "Conclusory statements without factual support are insufficient to defeat a motion for summary judgment." Surrell v. Cal. Water Serv., 518 F.3d 1097, 1103 (9th Cir. 2008). "There is no genuine issue of fact if the party opposing the motion 'fails to make an adequate showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

### 1. Access to Adobe Acrobat DC Pro

Plaintiff asserts that similarly situated individuals had access to Adobe Acrobat DC Pro and received their computers earlier than Plaintiff. See ECF No. 59, pgs. 18-19. To establish that similarly situated individuals did have access to Adobe Acrobat DC Pro, Plaintiff cites SDF 37 and 38 as evidence, both of which rely on Plaintiff's Exhibit 4, answers #59, 60, and 75. See ECF No. 59, pg. 18. Exhibit 4 is Plaintiff's affidavit which states that "all of my co-workers had" Adobe Acrobat DC Pro and not having that program "made my job much more difficult compared to my co-workers" because it took Plaintiff "significantly longer than any of my co-workers." ECF No. 59-4, pgs. 55 and 59.

///

///

32

Though Plaintiff contends that "all" of his co-workers had Adobe Acrobat DC Pro, Plaintiff does not provide evidence to show that any of the coworkers he is referencing similarly situated in all material aspects. Indeed, Plaintiff never explains how he defines similarly situated co-workers. Further, Plaintiff does not provide evidence that his co-workers were not within his protected class. At most, Plaintiff asserts in his opposition that "Plaintiff's co-workers, whose religious beliefs did not preclude vaccination, were treated more favorably. . ." ECF No. 59, pg. 19. However, the fourth element of a prima facie disparate treatment claim requires showing that "similarly situated individuals outside his protected class were treated more favorably," Chuang v. Univ. of Cal. Davis, 225 F.3d 1115, 1123 (9th Cir. 2000), and "[c]onclusory statements without factual support are insufficient to defeat a motion for summary judgment," Surrell v. Cal. Water Serv., 518 F.3d 1097, 1103 (9th Cir. 2008).

Plaintiff's statement in his opposition that these individuals were outside his protected class is merely a conclusory statement and none of the facts Plaintiff cites in support provide any evidence that those individuals were outside his protected class. Thus, Plaintiff fails to show that similarly situated individuals outside his protected class were treated more favorably with regard to access to Adobe Acrobat DC Pro and therefore the undersigned will grant summary judgment as to that claim.

2.      Withholding Plaintiff's Work Computer

Plaintiff's claim that he experienced the adverse action of his work computer being withheld and similarly situated individuals were treated more fairly suffers the same flaw as Plaintiff's claim as to Adobe Acrobat DC Pro, as Plaintiff never establishes that similarly situated individuals outside his protected class were treated more favorably as to receiving their work computers. Plaintiff relies on SDF 8, 9, and 11 to show that similarly situated individuals were treated more favorably as to his claim that his computer was withheld. See ECF No. 59, pg. 18-19. The evidence cited in support of SDF 8, 9, and 11 are Plaintiff's Exhibits 1 and 30.

Plaintiff's evidence is his affidavit were Plaintiff states that Employees Rinato and Brown "both seemed to receive their computers within two weeks," ECF No. 59-4, pg. 9 (Exhibit 1), and a statement that "[t]ypically, if a computer is not provided by the start date, the

33

employee receives it within one week of the start date," ECF No. 59-5, pg. 58 (Exhibit 30). These statements do not establish that employees similarly situated to Plaintiff outside Plaintiff's protected class were treated more favorably. Nothing in Plaintiff's statement, Exhibit 1, identifies whether employees Rinato and Brown are similarly situated and outside Plaintiff's protected class. Further, the statement is that those individuals "seemed" to get their computers within two weeks but does not allege that they did in fact get their computers within two weeks.

The second statement provides no more support for the claim. Nothing in the Exhibit 30 statement shows that similarly situated employees outside Plaintiff's protected class received their computer within a week. Indeed, the statement does not establish that anyone was treated more favorably, as it is, at most, a generalization that "typically" computers are provided within a week, which is not the same as stating that individuals did receive their computer within a week. Setting aside the theoretical nature of both statements ("seemed" and "typically"), neither statement addresses whether similarly situated individuals outside Plaintiff's protected class are treated more favorably. Thus, as with the Adobe Acrobat DC Pro claim, Plaintiff fails to provide evidence that similarly situated individuals outside Plaintiff's protected class were treated more favorably with regard to receiving their work computer.  Plaintiff's statement in his opposition that these individuals were outside his protected class is merely a conclusory statement and none of the evidence Plaintiff cites in support address whether those individuals were similarly situated and outside his protected class. Thus, Plaintiff fails to show that similarly situated individuals outside his protected class were treated more favorably with regard to withholding Plaintiff's work computer.

Given Plaintiff fails to establish similarly situated individuals were treated more favorably, the undersigned will therefore grant summary judgment as to Plaintiff's disparate treatment claim.

**C.      <u>Violation of Title VII of Civil Rights Act (Hostile Work Environment)</u>**

A Title VII hostile work environment claim requires showing that: "(1) [plaintiff] was subjected to a hostile work environment; and (2) [defendant] was liable for the harassment that caused the hostile environment to exist." <u>Fried v. Wynn Las Vegas, LLC</u>, 18

F.4th 643, 647 (9th Cir. 2021). "A hostile work environment is shown by 'the existence of severe or pervasive and unwelcome verbal or physical harassment because of plaintiff's membership in a protected class.'" Wash. v. Garrett, 10 F.3d 1421, 1431 n.14 (9th Cir. 1993) (citation omitted). Finding a hostile work environment does not require that the actions which make the environment hostile be directed at the individual. See Sharp v. S&S Activewear, L.L.C., 69 F.4th 974, 977-978 (9th Cir. 2023). A Title VII hostile work environment claim arises "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986) (internal citations omitted). Determining if a work environment is hostile is an objective standard, "one that a reasonable person would find hostile or abusive—as well as the victim's subjective perception that the environment is abusive." Harris v. Forklift Sys., Inc., 510 U.S. 17, 18 (1993). Determining whether the situation gives rise to a hostile environment requires "looking at all the circumstances, which may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 369.

Defendant here argues that Plaintiff's hostile work environment claim relies on "comments by two co-workers [which] do not establish a severe and pervasive discriminatory environment to alter Plaintiff's conditions of employment." ECF No. 56-1, pg. 14. Plaintiff asserts he is a "member of a protected class based on his religion, which precludes vaccination," and "totality of the circumstances indicates that Defendant subjected Plaintiff to a hostile work environment." ECF No. 59, pg. 20. Plaintiff provides the following examples: (1) Plaintiff's delayed pay; (2) withholding of Plaintiff's work computer; (3) terminating Plaintiff's health benefits; (4) Plaintiff receiving emails "on May 11, 2022, and on July 13, 2022, informing Plaintiff that he had been enrolled in Defendant's 'COVID-19 Screening Testing Program;" and (5) "Plaintiff was subjected to numerous unwelcome and derogatory remarks regarding unvaccinated individuals." Id. at 20-23.  The Court finds that, taken together, the

evidence provided by Plaintiff fails to establish that the frequency and severity of circumstances rise to the level of hostile work environment, nor does Plaintiff establish that such circumstances were discriminatory.

Plaintiff contends he "is a member of a protected class based on his religion, which precludes vaccination." ECF No. 59, pg. 20. To begin, the Court clarifies that Plaintiff's protected class is based on his religion – his vaccination status is not a protected class. While his religion is the basis for his vaccination exemption, vaccination status is not a protected class. See 42 U. S. C. §2000e-2(a)(1); Bostock v. Clayton Cty., 590 U.S. 644, 644 (2020) ("Title VII makes it "unlawful . . . for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual . . . because of such **individual's race, color, religion, sex, or national origin**"(emphasis added)); see also Boltz v. PeaceHealth, No. 6:24-cv-00246-AA, 2025 LX 289241, at *18 (D. Or. Feb. 19, 2025) ("[v]accination status is not a protected class under Title VII"); Brown v. NW Permanente, P.C., No. 3:22-cv-986-SI, 2023 U.S. Dist. LEXIS 167199, at *16 (D. Or. Sep. 20, 2023) (finding that "[t]o remain unvaccinated may be a secular choice, and unvaccinated status alone does not establish any connotation of religious affiliation").

Plaintiff fails to show that any of the allegedly hostile incidents were discriminatory to a protected class, aside from one derogatory comment made by a colleague, discussed further below.

Plaintiff argues that

> Plaintiff would not have been subjected to Defendant's unwelcome harassment but for his sincerely held religious beliefs, which preclude vaccination. SDF 4. Plaintiff's religion also formed the basis of Plaintiff's reasonable accommodation request and the events that flowed from it, including Defendant's harassment of Plaintiff. SDF 4. Therefore, Defendant's harassment was based on Plaintiff's religion. Thus, the third element of the *Dediol* test[5] is satisfied.

---

[5] Plaintiff states that he relies on the five-part test established in Dediol v. Best Chevrolet, Inc., 655 F.3d 435, 443 (5th Cir. 2011) because, though it is not binding authority, that case addresses religious harassment. See ECF No. 59, pg. 19, n. 2. According to Plaintiff, the third element in that test is "(3) the harassment was based on religion." Id. at 19. Thus, the Court's analysis here would fall under the third element of the Dediol test Plaintiff relies on. The Court finds that regardless of what test is used, Plaintiff's claim fails.

ECD No. 59, pg. 23.

The Court disagrees and will address each example Plaintiff provided to show a hostile work environment, explaining why Plaintiff fails to establish that any of them, aside from one derogatory comment, were discriminatory to a protected class.

### 1.    Delay in Pay and Withholding of Plaintiff's Work Computer

As to Plaintiff's claim that the delay in his pay and withholding of his computer contributed to a hostile work environment, the Court finds these are insufficient. Plaintiff was ultimately paid and provided a work computer. Thus, the Court finds that such actions do not rise to the level of severity required to show an objectively hostile work environment, even when considered alongside Plaintiff's additional allegations. Further, Plaintiff fails to establish that either of these were taken with discriminatory motive.  Plaintiff argues that:

> Objectively, the chances of the irregularities involved in withholding Plaintiff's pay and suspending the issuance of his computer coincidentally occurring to the same employee who had contested Defendant's vaccination mandate on religious grounds seem astronomical. Given the importance of an employee's pay and computer to their personal success and professional development, respectively, those delays seem particularly severe, if not pervasive.
> Thus, those delays seem more like part of a calculated effort "to render being unvaccinated so burdensome that those who haven't received shots will have little choice other than to get them", which was stated by Executive Branch officials as the intention of the mandate. SDF 1.

ECF No. 59, pgs. 20-21.

First, Plaintiff does not allege that these actions were taken because of his religion or that such actions were discriminatory as to a protected class. Plaintiff's argument is that "those delays seem more like part of a calculated effort" to compel Plaintiff to get vaccinated. Asserting that it "seems more like" the purpose of these actions was because Plaintiff was a member of a protected class is not the same as alleging and providing evidence that actions were taken because Plaintiff was a member of a protected class.

However, Plaintiff does not allege these were taken because he was a member of a protected class, but rather "a calculated effort 'to render being unvaccinated so burdensome that those who haven't received shots will have little choice other than to get them.'"

Vaccination status is not a protected class. Thus, even if Plaintiff's pay was delayed and his work computer was withheld to pressure Plaintiff to be vaccinated, which the Court does not find, Plaintiff does not allege that such action was because of Plaintiff's religion. Plaintiff's allegation is that his pay was delayed and his work computer was withheld as an effort to force Plaintiff to be vaccinated, it does not allege that such actions were taken because of Plaintiff's religion. Under Plaintiff's argument, an individual who was unvaccinated for health reasons, or unvaccinated for any other reason, would also be subject to such actions. Thus, Plaintiff does not provide any evidence that these actions were taken because Plaintiff is a member of a protected class and Plaintiff fails to show such actions were discriminatory.

### 2.    Termination of Healthcare Benefits

Though Plaintiff references the termination of his health benefits when addressing whether Defendant's harassment affected the term, condition, or privilege of Plaintiff's employment, ECF No. 59, pg. 24, Plaintiff does not raise this within his earlier argument that Plaintiff was subject to a hostile work environment, ECF No. 59, pgs. 20-23.  Out of an abundance of caution, the Court will consider the termination of Plaintiff's health benefits as part of Plaintiff's hostile work environment claim. As with Plaintiff's allegation that his pay was delayed and his work computer was withheld, Plaintiff provides no evidence to show that the alleged termination of his healthcare benefits was discriminatory. Plaintiff fails to make any specific argument or cite any evidence to show such action was taken because of Plaintiff being a member of a protected class or that such action was discriminatory towards a protected class. Absent such showing, the Court cannot find that such action was taken with discriminatory motive, and therefore cannot contribute to finding a hostile work environment.

### 3.    COVID-19 Screening Testing Program Enrollment and Related Emails

Next, Plaintiff alleges that "Defendant harassed Plaintiff by enrolling Plaintiff in Defendant's 'COVID-19 Screening Testing Program' without Plaintiff's consent and over Plaintiff's objections." ECF No. 59, pg. 22. Plaintiff contends that he received two emails, on May 11, 2022, and July 13, 2022, "informing Plaintiff he had been enrolled" in that screening testing program. Id. at 21. According to Plaintiff, he "previously made clear to Defendant that

he did not consent to enrollment," and the CDC guidance on COVID testing stated that workplace testing should only be conducted with the employee's informed consent. Id. Plaintiff assert that despite this, he was informed that "if an employee cannot provide proof of their vaccinated status, then 'the employee will be required to test when conditions warrant even if they have not been notified.'" Id. (quoting Plaintiff Exhibit 34). Plaintiff argues that Defendant "did not seem concerned about the serious civil rights implications of Defendant's mandatory testing policy even though that policy discriminated against employees whose sincerely held religious beliefs preclude vaccination." Id. at 22. According to Plaintiff, the COVID-19 Screening Testing Program therefore "reasonably and objectively seemed designed to discriminate against employees whose religious beliefs preclude them from vaccination." Id.

Plaintiff does not allege that he was enrolled in the screening testing program because of his religion and instead asserts that he was enrolled because he was unvaccinated. Plaintiff asks the Court to make the jump that because Plaintiff's vaccination status was because of his religion, anything imposed on him because of his vaccination status is therefore imposed because of his religious beliefs. That is not true. The screening testing program was, as Plaintiff describes, imposed on all unvaccinated employees, not just religious ones. Nothing Plaintiff alleges supports a plausible inference that the COVID-19 Screening Testing Program was undertaken even in part based on religion. As previously discussed, this means that individuals who are unvaccinated because of reasons other than their religion were enrolled in that program. Thus, Plaintiff's own allegation does not support finding that Plaintiff was enrolled because of his protected class, religion, but because of his vaccination status, which is not a protected class. Thus, Plaintiff's own allegation does not support finding the COVID-19 Screening Testing Program was not discriminatory.

Further, the Court finds that two emails informing Plaintiff he was enrolled in such program, without more, is insufficient to show a hostile work environment. Plaintiff contends that "[t]he fact that Plaintiff was not tested is irrelevant because the mere threat of testing hanging over Plaintiff's head caused Plaintiff 'near constant stress and anxiety', as Plaintiff observed in his reasonable accommodation request." ECF No. 59, pg. 22 (citing SDF

12 and 14). Though Plaintiff claims that he subjectively felt a hostile work environment, establishing a hostile work environment also requires showing "an objectively hostile or abusive environment—one that a reasonable person would find hostile or abusive." Harris, 510 U.S. at 18.  The Court notes that, according to Plaintiff, the program only required testing "'when conditions warrant.'" ECF No. 59, pg. 21 (quoting Exhibit 34, ECF No. 59-6, pg. 13). The Court finds this is further evidence that enrollment in this program is not objectively hostile nor abusive as the testing required by the program was speculative, even if Plaintiff subjectively felt differently.

The Court does not find Plaintiff's enrollment in the COVID-19 Screening Testing Program, and the two emails informing Plaintiff he was enrolled in such program, rise to the level of an objectively hostile or abusive environment, nor does Plaintiff establish that such actions were discriminatory.

### 4.    Numerous Unwelcome and Derogatory Remarks

Finally, Plaintiff asserts that he

> was subjected to numerous unwelcome and derogatory remarks regarding unvaccinated individuals including, but not limited to, that remaining unvaccinated is "worse than having a bunch of DUIs", that unvaccinated individuals "don't give a [explicative] about themselves or anyone else", and that unvaccinated individuals are "stupid, and you can't fix stupid". SUF 45-47. At least one of those unwelcome and derogatory remarks targeted individuals whose sincerely held religious beliefs preclude vaccination. SUF 48. In fact, Plaintiff testified that his co-workers made so many unwelcome and derogatory remarks about unvaccinated individuals that he decided to start writing them down. SDF 32.

ECF No. 59, pg. 23.

According to Plaintiff, all of these remarks, except one, are "regarding unvaccinated individuals." At oral arguments, Plaintiff asserted that there were additional comments in the public about vaccination status and many other derogatory comments about unvaccinated individuals at that time. However, the Court finds that such a general allegation is not evidence of a hostile work environment. More important, vaccination status is not a protected class. Thus, any remarks about unvaccinated individuals, without reference to religion or being discriminatory to a protected class, cannot provide evidence of a hostile work

40

environment under Title VII.  As to the derogatory remark directed at individuals who are unvaccinated because of their religious views, Plaintiff contends that an employee stated "[t]he ones you really got to watch out for are the ones that say it's against their religion. They're really crazy." ECF No. 59-1, pg. 17 (SUF 48 (citing Hansen Dec., Ex. 1, Lowe Dep., p. 67:22-69:3)). The Court finds that this derogatory comment was discriminatory. However, this single discriminatory comment does not give rise to finding a hostile work environment.

One incident of harassment can establish a hostile work environment, "but for a single incident to suffice, it must be extremely severe." Fried, 18 F.4th at 648 (internal citations omitted). A hostile work environment requires more than "[a] mere offensive utterance" and therefore, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Clark Cty. Sch. Dist., 532 U.S. at 271.

The Court finds that this single derogatory comment is insufficient to establish a hostile work environment. Though offensive, the comment was not extremely severe, and therefore does not support a hostile workplace claim. Contrast Kortan v. Cal. Youth Auth., 217 F.3d 1104, 1110 (9th Cir. 2000) (concluding that though the "comments were offensive," referring to a coworker as "castrating bitch" or "Madonna" or "regina," once or twice was insufficient to find a hostile work environment); Manatt v. Bank of Am., 339 F.3d 792, 798 (9th Cir. 2003) (concluding that jokes referring to "China man" was simple teasing and coworkers "racially insensitive humor" was only directed at Plaintiff "on only a couple of occasions,", including "pull[ing] their eyes back with their fingers in an attempt to imitate or mock the appearance of Asians," which was insufficient to establish a hostile work environment); Vasquez v. Cty. of L.A., 349 F.3d 634, 642-43 (9th Cir. 2003) (affirming dismissal because a few comments such as telling Plaintiff he had "a typical Hispanic macho attitude" and "Hispanics do good in the field" were insufficient to establish a hostile workplace), with Little v. Windermere Relocation, Inc., 301 F.3d 958, 966-67 (9th Cir. 2001) (concluding a single incident of rape sufficient to establish a hostile work environment).

/ / /

41

5.    Totality of the Circumstances

Having found that Plaintiff fails to provide facts showing any of the alleged adverse actions were discriminatory, taken because of Plaintiff's membership of a protected class or directed at a protected class, aside from one derogatory comment, Plaintiff fails to establish a hostile work environment. That single discriminatory, derogatory comment does not establish the severity or pervasive nature required to show a hostile work environment. See Wash. v. Garrett, 10 F.3d 1421, 1431 n.14 (9th Cir. 1993); Harris, 510 U.S. at 18. Thus, the undersigned will grant Defendant's motion for summary judgment as to Plaintiff's hostile work environment claim.

**D.    Violation of Title VII of Civil Rights Act (Constructive Discharge)**

Plaintiff's constructive discharge claim relies on the same workplace conditions alleged in Plaintiff's hostile work environment claim. See ECF No. 59, pgs. 25-26. Constructive discharge is a "graver" claim than a hostile work environment claim and therefore, by failing to establish a hostile work environment, Plaintiff's constructive discharge claim also fails. Pa. State Police v. Suders, 542 U.S. 129, 149 (2004); see Brooks v. City of San Mateo, 229 F.3d 917, 930 (9th Cir. 2000) (holding that "[w]here a plaintiff fails to demonstrate the severe or pervasive harassment necessary to support a hostile work environment claim, it will be impossible for her to meet the higher standard of constructive discharge: conditions so intolerable that a reasonable person would leave the job). Thus, the undersigned will grant summary judgment as to Plaintiff's constructive discharge claim.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

42

## IV.  CONCLUSION

Accordingly, IT IS HEREBY ORDERED as follows:

1.    The Clerk of the Court is directed to substitute Brooke Rollins for Thomas Vilsack as Defendant in this action and to terminate Thomas Vilsack as a party.

2.    Defendant's motion for summary judgment, ECF No. 56, is GRANTED.

3.    Plaintiff's motion in limine, ECF No. 63, and Defendant's Motion in limine, ECF No. 65, are DENIED AS MOOT;

4.    All remaining dates and deadlines, including the pretrial conference set for March 18, 2026, and trial set for March 30, 2026, are VACATED; and

5.    The Clerk of the Court is directed to enter judgment in Defendant's favor and close the case.

Dated:  March 5, 2026

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

43